# 17-1856-cv(L), 17-1858-cv(CON)

# United States Court of Appeals

*for the*

## Second Circuit

───────────── • ─────────────

D. JOSEPH KURTZ, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

– v. –

COSTCO WHOLESALE CORPORATION,
KIMBERLY-CLARK CORPORATION,

*Defendants-Appellants.*

───────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## SUPPLEMENTAL OPENING POST-REMAND BRIEF
## AND SPECIAL APPENDIX

ADAM J. HUNT
LENA H. HUGHES
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 887-8784
bmatsui@mofo.com

*Attorneys for Defendant-Appellant Costco Wholesale Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellant Costco Wholesale Corporation ("Costco") is a publicly-held corporation. Costco has no parent corporation and no publicly-held corporation owns 10% or more of Costco's stock.


Dated: January 10, 2020                          s/ Brian R. Matsui
                                    _____

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF ISSUES ..........................................................................1

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE.......................................................................3

    A.    Kurtz Sues And The District Court Certifies A New York Class Of Purchasers ..................................................................................3

    B.    This Court Grants Costco's Rule 23(f) Petition And Remands For Further Analysis...........................................................................4

    C.    On Remand, The Parties Submit Supplemental Reports And The District Court Holds A Hearing ....................................................5

        1.    Evidence regarding hedonic regression ......................................5

        2.    Mr. Weir's report and testimony regarding injury.....................8

        3.    Mr. Weir's testimony regarding causation ................................8

        4.    Defendants' experts' disputes with Mr. Weir regarding hedonic regression and his model ..............................................9

            a.    Hedonic regression cannot calculate a price premium in the flushable wipes market...........................9

            b.    Mr. Weir's model does not calculate a price premium for Costco's flushable wipes ...........................11

            c.    Small, sensible changes to Mr. Weir's model generate vastly different results ......................................12

            d.    Real world evidence must be considered to reach a "price premium" conclusion ...........................................13

ii

D. The District Court Maintains Its Class Certification Order ...............14

    1. Admissibility ..............................................................14

    2. Predominance ...........................................................14

SUMMARY OF ARGUMENT ............................................................16

STANDARD OF REVIEW ................................................................17

ARGUMENT ....................................................................................17

I. MR. WEIR'S EXPERT OPINION SHOULD HAVE BEEN EXCLUDED ................................................................................17

II. THE DISTRICT COURT'S DECISION ABDICATES TO THE JURY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT ................18

    A. Rule 23(b)(3) Requires District Courts To Resolve Disputes Related To Certification ......................................18

    B. The District Court Failed To Resolve Disputes That Relate To Rule 23's Requirements ......................................20

III. UNDER THE CORRECT STANDARD, KURTZ FAILED TO PROVE THAT COMMON ISSUES PREDOMINATE .............................24

    A. Individual Issues Of Injury Will Predominate ....................25

        1. The essential predicates of hedonic regression are not met ............................................................................25

        2. At best, Mr. Weir's model calculates an "average" relationship between "flushability" and price across all retailers, brands, and products ...................................30

        3. Mr. Weir's model does not isolate injury attributable to Costco's alleged misrepresentation ...........................34

    B. Individual Issues Of Loss Causation Will Predominate .....................38

CONCLUSION ....................................................................................40

iii

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    568 U.S. 455 (2013)......................................................................................21, 22

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (N.Y. 2009) ...............................................................................38

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................... 3, 19, 20, 24, 32, 34, 35, 36

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)......................................................................................17, 18

*Ebin v. Kangadis Food*,
    No. 13 Civ. 2311, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014)........................24

*Enzinna v. D'Youville College*,
    34 Misc.3d 1223(A) (N.Y. Sup. Ct. 2010) ........................................................23

*Erica P. John Fund v. Halliburton Company*,
    563 U.S. 804 (2011)...........................................................................................21

*Fernandez v. UBS AG*,
    No. 15-cv-2859, 2018 WL 4440498 (S.D.N.Y. Sept. 17, 2018).........................3

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018)............................................................23

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ..........................................................................19, 20

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) .............................................................................17

*In re Joint Eastern & Southern Dist. Asbestos Litig*,
    52 F.3d 1124 (2d Cir. 1995) .............................................................................18

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    897 F.3d 88 (2d Cir. 2018) ...............................................................................24

*McLaughlin v. Am. Tobacco*,
  522 F.3d 215 (2d Cir. 2008) ...............................................................40

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
  522 F.3d 6 (1st Cir. 2006)............................................................31, 39

*Pegues v. Miss. State Employment Serv.*,
  699 F.2d 760 (5th Cir. 1983) ...........................................................38

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL, No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013)...........................................................30

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
  49 F. Supp. 3d 385 (S.D.N.Y. 2014) .................................................18

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................24

*Singleton v. Fifth Generation, Inc.*,
  No. 5:15-CV-474, 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017*)* .....................3

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ......................................................30, 31

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ..............................................................19

*UFCW Local 1776 v. Eli Lilly*,
  620 F.3d 121 (2d Cir. 2010) ..............................................................40

*United States v. Arenas-Ortiz*,
  339 F.3d 1066 (9th Cir. 2003) ...........................................................38

*In re Vivendi, S.A. Securities Litig.*,
  838 F.3d 223 (2d Cir. 2016) ........................................................34, 38

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................18, 19

## Other Authorities

Fed. R. App. Proc. 28(i) ...........................................................................18

Fed. R. Civ. Proc. 23 ..............................................................3, 18, 19, 20, 39

Fed. R. Civ. Proc. 23(b)(3) ...................................................... 1, 2, 16, 18, 22, 24, 30

Fed. R. Civ. Proc. 23(f) ............................................................................4

Fed. R. Evid. 702 ............................................................................14, 17

## STATEMENT OF ISSUES

1. Whether the district court abused its discretion in admitting Kurtz's expert evidence.

2. Whether the district court erred in refusing to resolve disputes over the capacity of Kurtz's expert evidence to serve as common evidence of injury and causation.

2. Whether the district court abused its discretion in maintaining its certification of a Rule 23(b)(3) class.

## INTRODUCTION

After this Court granted interlocutory review of the district court's certification decision, the Court gave Kurtz a second chance to prove that a damages class of purchasers of Costco's flushable wipes should have been certified. It also gave the district court another shot to resolve the parties' disputes about whether hedonic regression—Kurtz's proposed method of establishing the causation and injury elements of his claim—is capable of serving as common evidence for the class. But on remand, neither Kurtz nor the district court took advantage of this Court's generous opportunity.

Although this Court advised Kurtz of its "specific concern with" his "proof" that he can establish injury and causation through common evidence, Kurtz elected to submit only a supplemental expert opinion on a statistical technique that cannot

prove either. Summary Order 4, Dkt. 197-1. Kurtz's expert opined that he had applied a hedonic regression model to calculate a "price premium" on Costco's flushable wipes. Costco's expert disputed this. She explained why, under irrefutable principles of econometrics, Kurtz's hedonic regression evidence does not and cannot establish either a price premium or causation on a classwide basis in this case.

The district court brushed away the parties' disputes and opted to maintain its prior certification decision "for the reasons already explained" in its earlier order. SPA165. Mistaking evidentiary admissibility for satisfaction of Rule 23(b)(3)'s predominance requirement, the Court held that disputes regarding the ability of Kurtz's hedonic regression to serve as common evidence went only "to weight rather than admissibility." SPA162. Thus, without ever having resolved what hedonic regression can measure, the court ruled that Kurtz had "met [his] burden and produced common proof of causation and injury." SPA167.

The district court's hands-off approach to the parties' class certification disputes highlights the dire need for this Court's guidance. This Court and the Supreme Court have instructed courts to rigorously scrutinize evidence submitted in support of class certification and resolve disputes relevant to certification requirements. Rule 23(b)(3)'s efficiency benefits outweigh its costs to procedural fairness and individual autonomy only when common issues will predominate over

individual ones at trial. It is thus essential that judges determine whether a plaintiff's case is provable through predominantly common evidence *before* those costs are incurred. Many district court have taken these instructions to heart and ensure that expert evidence actually is capable of serving as common evidence before certifying a class. *E.g., Fernandez v. UBS AG*, No. 15-cv-2859, 2018 WL 4440498 (S.D.N.Y. Sept. 17, 2018); *Singleton v. Fifth Generation, Inc.*; No. 5:15-CV-474, 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017*)*. But others, like the district court here, avoid resolving parties' disputes under the mistaken view that "consideration of the 'merits'" of expert evidence has "'no place in the class certification inquiry.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 32 (2013). This Court should reaffirm that courts must resolve disputes that go to Rule 23's requirements and reverse the district court.

## STATEMENT OF THE CASE

### A. Kurtz Sues And The District Court Certifies A New York Class Of Purchasers

Kurtz sued Costco and Kimberly-Clark for allegedly misrepresenting that their flushable wipes are flushable. A62-108. As relevant here, Kurtz sought certification of a class of New York purchasers of Costco's flushable wipes asserting claims under New York's General Business Law. A97-98.

The district court granted Kurtz's motion. SPA117-118; SPA134. Applying a "general preference" for class certification (SPA77), the court held that Rule 23's

commonality and predominance requirements were satisfied with respect to the misrepresentation, injury, and causation elements of Kurtz's claims. Even though Kurtz had not attempted to show that reasonable consumers have a uniform understanding of the term "flushable," the court held that the misrepresentation issue is suitable for class treatment because New York law evaluates misrepresentations objectively. SPA80-86. The court similarly held that Kurtz satisfied his burden to show a common injury by merely identifying—without applying—the statistical technique of hedonic regression. SPA126. The court also assumed causation would be proved if injury and misrepresentation were because New York's General Business Law does not require reliance. SPA91-92. And the district court held that Kurtz had Article III standing to seek injunctive relief because other consumers (though not Kurtz) are "still at risk." SPA106-108.

### B. This Court Grants Costco's Rule 23(f) Petition And Remands For Further Analysis

Costco filed a petition for review under Federal Rule of Civil Procedure 23(f), which this Court granted, along with petitions filed by Kimberly-Clark and The Procter & Gamble Company ("P&G"). This Court consolidated Costco and Kimberly-Clark's appeals, and ordered that they be heard simultaneously with P&G's appeal.

After briefing and oral argument, this Court found the "record presently before" it inadequate to decide the appeal and remanded. Summary Order 4, Dkt.

197-1.  The Court explained that defendants argued that "Plaintiffs have not proven that common issues will predominate because they have not shown that they can establish two necessary elements of their cause of action—injury and causation—by common proof."  *Id*.  But the record did not allow the Court to decide "whether the Defendants' predominance argument has merit."  *Id.*  The Court remanded to give the parties "the chance" to supplement the record and for the district court to reassess predominance, noting its "specific concern with the Plaintiffs' proof that they can establish the injury and causation elements of their claims at trial with common evidence."  *Id.* at 4.

### C. On Remand, The Parties Submit Supplemental Reports And The District Court Holds A Hearing

On remand, the parties submitted supplemental expert reports.  CA1341-1370; CA1290-1311; CA1376-1466; A1785-1820.  At an ensuing evidentiary hearing, the parties presented the testimony of their respective experts and Kimberly-Clark presented the testimony of a senior brand manager for Kimberly-Clark's Cottonelle brand.  A2822-3733.

#### 1. *Evidence regarding hedonic regression*

The court heard evidence on the use of hedonic regression.  Hedonic regression is a statistical technique that, when properly used, "measures the average relationship between product attributes and price."  A3595.  To calculate

such a relationship, the analysis must control for product attributes that are correlated with the attribute of interest (here, the "flushable" attribute). A3588.

The experts agreed that the seminal article on hedonic regression was authored by Professor Sherwin Rosen. CA1296 n.15. Professor Rosen's article set forth a "mathematical proof" under which the coefficient on the attribute of interest estimated using a hedonic regression is equal to a "price premium" for that attribute of interest. A3567. A "price premium" is "the difference between the retail market price" of the product "and a measure of the market price that would exist but for" the defendants' "alleged misrepresentation[s]." CA1295. In a consumer product market, three conditions must be met for hedonic regression to estimate a price premium.

*First*, the consumer product market must be perfectly competitive. A perfectly competitive market has "a lot of firms … producing essentially the same product or varieties of product." A3569. Such firms are "price-takers" for whom "price essentially just [] cover[s] their costs." A3565. If they make a deceptive claim about a product attribute they would "have to lower the[ir] price" if they labeled their products truthfully. A3569-3570; A3572. Perfectly competitive markets include the commodities market and have included the milk and eggs markets. A3657.

A market cannot be perfectly competitive if there are dominant firms or significant brand loyalty. A3573-3574. In such cases, the firms can price "strategic[ally]," which means "it's no longer the case that … [the] coefficient on the attribute of interest" represents "the price premium." A3574.

**Second**, the attribute of interest must be cleanly defined. A "cleanly defined" attribute of interest is "easy to quantify and easy to understand," like "steel" and "tin," which are "binary" and unambiguous. A3571. In contrast, a term like "tough" is an inadequately definable term given consumers' differing interpretations of that term. A3574.

**Third**, there must not be "perfect collinearity" between the attribute of interest and another attribute. A3566. That is, the attribute of interest and another attribute cannot always and exclusively be found together. A3566. For example, it would be impossible to use hedonic regression to calculate a price premium for a "steel" widget in a market that sells steel and tin widgets if all the steel widgets are four inches and all the tin widgets are two inches. A3575. Because the length of the widget is "perfectly collinear" with the widget material, "there is not enough variability in the underlying data for the regression to tease out the separate effects of those two attributes." A3575.

## 2. Mr. Weir's report and testimony regarding injury

Mr. Weir submitted a supplemental report that purported to find an 8.5619% price premium on Costco's flushable wipes using hedonic regression. CA1309. Mr. Weir admitted that when the class was originally certified he had only "offered the concept of regression analysis but had not conducted the work." A2899. So on remand, he constructed a hedonic regression model by merging data from Costco—the only retail location where Costco's flushable wipes are sold—with data from a data-collection company (IRI) that tracks numerous retailers. CA1308. Although Mr. Weir's model purported to include control variables for some product attributes, it did not include variables for cleaning effectiveness, thickness, or moistness. CA1303-1307.

Mr. Weir admitted that his hedonic regressions were only "intended to measure class-wide harm in the aggregate." A2833. He explained: "I'm not talking about what any one individual paid. I'm talking about what the class paid in the aggregate across the period that I have measured." A2968; A3019.

## 3. Mr. Weir's testimony regarding causation

Although this Court noted a specific concern about Kurtz's ability to prove causation through common evidence, Kurtz submitted no causation evidence on remand. Mr. Weir admitted that hedonic regression, on its own, establishes only correlation, not causation. A3023. To bridge the gap between correlation and

causation, he conceded an "economic theory" is required.  A3023.  Mr. Weir, who is not an economist, did not explain what that economic theory would be except to say that "it seems illogical" for a producer not to charge a price premium for an attribute that is "important."  A3346; CA2077-2078.

### 4. Defendants' experts' disputes with Mr. Weir regarding hedonic regression and his model

Defendants' experts testified about why hedonic regression is not capable of calculating a "price premium" attributable to "flushability" in this case.

### a. Hedonic regression cannot calculate a price premium in the flushable wipes market

Dr. Martin, Costco's expert, explained that "hedonic regression … is the wrong statistical tool" for calculating a price premium in the flushable wipes market because the three essential predicates for doing so in the consumer products market are absent.  A3563-3564.

*First*, the flushable wipes market is an "imperfectly competitive" market.  A3575.  "There are relatively few producers" and "[t]he products are differentiated."  A3575.  This "cause[s] there to be some customer loyalty," which means that instead of being price-takers the sellers are "able to price strategically."  A3576.  In such a case, hedonic regression is incapable of measuring a "price premium" because the market does not compel the firm to lower its price when the label is removed.  A3575-3576.

***Second***, the variable of interest—"flushable"—is not an "easily defined attribute." A3577. Dr. Martin explained that Mr. Weir's definition—whether "there is a flushable claim on the package or not"—is especially ill defined. Mr. Weir's approach "suffers from what's called omitted variable bias." A3577-3578. It fails to recognize and control for the fact that the value of "flushable" wipes also includes value stemming from "how well they clean, how well they absorb moisture, [and] the drape and the strength of the product." A3578. Mr. Weir's measurement of a price premium attributable to whether the product bears a flushable label "pick[s] up the effect of those other unique attributes." A3578.

***Third***, there is perfect collinearity in any data needed to calculate a price premium on *Costco*'s flushable wipes. Dr. Martin explained that, assuming the requirements for hedonic regression could otherwise be met, one way to calculate a price-premium would be to use just Costco sales data. But that cannot be done because, in Costco's data, the "flushable" attribute is "perfectly collinear" with the "baby/toddlers" attribute in Mr. Weir's model. CA1345; A3649. In other words, all of the flushable wipes are *not* baby/toddler products, and all of the nonflushable wipes *are* baby/toddler products. CA1345. Accordingly, when Mr. Weir's regression model is run on Costco's sales data, "[i]t fails … it cannot estimate [a] coefficient on the flushable attribute." A3580. The price premium could be attributable to the product being a baby/toddler product or not.

Dr. Martin explained that the same "perfect collinearity" problem exists when one attempts to calculate a Costco-specific price premium using Mr. Weir's dataset of merged Costco and IRI data.  A3649; CA1303.  To "understand what the Costco-specific flushable attribute premium is," one would need to construct what is known as "an interaction term"—here, a term that captures products that are both sold at Costco and are flushable.  A3637.  Mr. Weir admitted that he did not create an interaction term.  A3044-3045.  And he couldn't have.  As Dr. Martin explained, "that's not going to work either for exactly the same reason that you can't run the regression on Costco's data alone": "you don't have enough variability."  A3637.  Dr. Martin explained that "[i]f you try to create that interaction term in [Mr. Weir's] larger dataset … the model again would not be able to estimate a Costco-specific flushable coefficient."  A3637-3638.

### b. Mr. Weir's model does not calculate a price premium for Costco's flushable wipes

Dr. Martin explained that because Mr. Weir could neither run a regression using the Costco data nor create an interaction term, his regression could not calculate a price premium for *Costco*'s flushable wipes.  Mr. Weir ran his regression on a dataset that merged Costco data with some of the IRI data that included other retailers, other brands, and other products.  CA1303.

Because the IRI data includes products sold at other retailers, Dr. Martin testified that Mr. Weir's regression using the merged IRI and Costco data "doesn't

get an estimate that's specific to Costco." A3587. Rather, "at best, [Mr. Weir's] result is … an average coefficient across all of the retailers, all of the brands of moist wipes that are included in his dataset." A3587. Because it is an average, "some retailers" may have a "zero price premium," while "others have a 16 percent price premium." A3588. Dr. Martin explained that "you're not able to tell" from Mr. Weir's regression "for any specific retailer, for any specific product … what the actual … price premium would be." A3588.

### c. Small, sensible changes to Mr. Weir's model generate vastly different results

The defendants' experts pointed out that small tweaks to Mr. Weir's model either eliminated the supposed "price premiums" or made them price discounts. For instance, Dr. Martin explained that when Mr. Weir's model is used to compare Costco's flushable wipes to other wipes sold in similarly sized packages, it finds no price premium for Costco's products. A3593. Costco's wipes are sold in far larger sizes than many of the products captured in the IRI data. When Dr. Martin ran "exactly" Mr. Weir's regression but removed "really small travel packs … that are not sold at Costco" and often carry a premium, the "coefficient on the flushable attribute becomes negative." A3593. Dr. Martin explained that this "shows that [Mr. Weir's] model … lacks any robustness" because "[i]t ought to be the case that if you make small, sensible changes to the regression, your results stay pretty much as they were." A3593.

12

The other defendants' experts also found that small adjustments eliminated Mr. Weir's claimed "premiums." Rather than run a hedonic regression on the actual class periods certified, Mr. Weir picked a different period of time. Drs. Scott and Ugone—the experts for P&G and Kimberly-Clark—both found that applying Mr. Weir's model to other timeframes within or equal to the actual class periods resulted in no price premiums. A3368-3370; CA1444-11447. When confronted with these facts, Mr. Weir stated that he "may wind up with a different model than [he] used" if he sought to measure the class periods. A2930. Dr. Ugone also found that using Mr. Weir's model but controlling for hand and face wipes "completely eliminates Mr. Weir's claimed price premium." CA1443-1444.

### d. Real world evidence must be considered to reach a "price premium" conclusion

Mr. Weir did not consider evidence of how Costco sets its prices when running his hedonic regression model. A3023-3026. Dr. Martin explained that "[i]t's not acceptable from the perspective of science to get results that don't comport with other market evidence and to ignore that evidence." A3589. Dr. Martin herself considered Costco's 10-K filings with the SEC, testimony from a Costco employee responsible for pricing Costco's flushable wipes, and empirical data regarding Costco's pricing of flushable wipes. Dr. Martin concluded that the "real world evidence … is consistent with there being no [price] premium" for Costco's flushable wipes. A3596-3597.

### D. The District Court Maintains Its Class Certification Order

In post-hearing briefing the defendants asked the court to decertify the damages classes on two grounds. First, defendants contended that the court should strike Mr. Weir's testimony under Federal Rule of Evidence 702. And second, the defendants argued that, even if considered, Mr. Weir's testimony did not satisfy the plaintiffs' burden to establish predominance.

#### 1. Admissibility

The district court held that Mr. Weir's testimony is admissible under Rule 702. The court declined to decide whether certain market conditions were required for hedonic regression to be reliable, because it believed they related to the "weight" and not the "inadmissib[ility]" of the evidence. SPA161. The court similarly dismissed the defendants' other criticisms of Weir's model, reasoning that "[a]ny objections to Weir's specific hedonic regression analyses go to weight rather than admissibility." SPA162.

#### 2. Predominance

The district court then held that Kurtz proved predominance because he had shown that he could prove causation and injury through common evidence. Citing back to its admissibility discussion, the court reasoned that Weir's testimony "support[ed] the contention that there is a marketwide price premium attributable to the flushable label" and that this "sufficiently demonstrates that common

evidence can prove causation and injury." SPA164. The court did not address Mr. Weir's concession that hedonic regression does not itself provide evidence of causation.

The district court dismissed defendants' arguments that Kurtz still had not shown that each of the class members suffered a common injury. The court believed it was "[o]f no consequence" whether Kurtz had "demonstrated that any single consumer was injured" or that "Weir generated an average relationship between price and the flushable label across the market." SPA166. The court reasoned that "[t]his ignores Plaintiffs' contention that there is a *marketwide inflation of price by a particular calculable percentage*." SPA166.

The court also declined to resolve the experts' disputes about the capability of hedonic regression to calculate a price premium in this case, and for Costco's flushable wipes in particular. It thus did not address Dr. Martin's opinion that the three preconditions for hedonic regression's "mathematical proof" do not exist in the flushable wipes market. It similarly left unaddressed her explanations for why the number Mr. Weir's model generates is not Costco-specific and does not isolate the value of "flushability" from other product attributes. Instead, the court stated that "[d]isagreement about Weir's judgments in developing and performing the model … are questions answerable by admitted evidence." SPA165.

## SUMMARY OF ARGUMENT

The district court should have decertified Kurtz's Rule 23(b)(3) class. Kurtz failed to prove that individual issues of injury and causation will not predominate. Even with a second shot, he came up short—presenting only a supplemental expert opinion that fails even threshold requirements of admissibility.

On the critical question of Kurtz's compliance with Rule 23(b)(3)'s predominance requirement, the district court punted to the jury. Defendants explained that Kurtz's expert evidence is simply incapable of calculating a price premium attributable to defendants' alleged misrepresentations in this case. To start, hedonic regression is the wrong statistical tool for this case because the three essential requirements for its invocation are absent. Even on its own terms, Kurtz's regression does not calculate a price premium charged for *Costco*'s flushable wipes, isolate a premium for the wipes' "flushability," or establish causation. Because Kurtz's expert evidence cannot do what the class needs it to, there is no assurance that individual issues of injury and causation will not predominate.

When these disputes are resolved, as they must be before certification, Kurtz's failure to prove predominance is clear. Kurtz has no proof that the injury and causation elements of his claims can be shown through common evidence.

Without it, individual issues of injury and causation will overshadow any common ones.

## STANDARD OF REVIEW

"Although we review class certifications for abuse of discretion, we review de novo the district court's conclusions of law that informed its decision to certify a class." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks omitted).

## ARGUMENT

## I. MR. WEIR'S EXPERT OPINION SHOULD HAVE BEEN EXCLUDED

When given a second chance to prove predominance, Kurtz elected to submit only a supplemental opinion from Mr. Weir. That opinion fails to meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for several reasons. First, hedonic regression is not a well-accepted technique unless certain market conditions are present. *Supra* pp. 5-7. Yet Mr. Weir's analysis merely assumes (but does not show) that hedonic regression can be used in almost any context. Dr. Martin explained why these conditions are not present in the flushable wipes market. *Supra* pp. 9-11. Second, Mr. Weir's hedonic regressions should be excluded for failing to "examine an appropriate selection of data," follow a "predictable and justifiable methodology," or "control for the 'major factors' that might influence

the dependent variable." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014), aff'd 638 F. App'x 43 (2d Cir. 2016). Instead, Mr. Weir cobbled together a data set that excluded products most like Costco's (private label) and included dissimilar ones (face/hand wipes and travel packages). A3585-3586; A3036; A3408; A3592-3593; A3414. For these reasons and those set forth in Kimberly-Clark's brief (which Costco incorporates by reference (Fed. R. App. Proc. 28(i); Kimberly-Clark Br. 15-33)), Mr. Weir's opinion should have been excluded.

## II. THE DISTRICT COURT'S DECISION ABDICATES TO THE JURY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT

### A. Rule 23(b)(3) Requires District Courts To Resolve Disputes Related To Certification

Admissibility is only the starting point of a court's Rule 23(b) analysis. "[E]ven if properly considered," the evidence must also establish that that Rule 23's requirements, including Rule 23(b)(3)'s predominance requirement, are satisfied. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 354 (2011).

A district court's role in certifying a class differs from its gatekeeping role under *Daubert*. Under *Daubert* the court must ensure that expert evidence is fundamentally reliable, but generally may not "assess[] the weight of conflicting evidence." *In re Joint Eastern & Southern Dist. Asbestos Litig*, 52 F.3d 1124, 1133 (2d Cir. 1995). By contrast, under Rule 23, the court must perform a

"rigorous analysis" of the plaintiff's evidence and find that "each requirement [of Rule 23] is 'established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). In doing so, the court must "resolve[] factual disputes relevant to each Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*IPO*"). "[T]he obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id*.

The Supreme Court has repeatedly reminded courts of their obligation to resolve disputes that bear on class certification even when they overlap with merits issues. For example, in *Wal-Mart Stores*, the Supreme Court rigorously scrutinized the plaintiffs' expert and survey evidence before concluding that the plaintiffs failed to establish commonality because they did "not demonstrate that the entire company operates under a general policy of discrimination." 564 U.S. at 358 (internal quotation marks and alterations omitted). It explained that Rule 23 required this analysis even though "proof of commonality necessarily overlap[ed] with respondents' merits contention that Wal-Mart engages in a *pattern or practice* of discrimination." *Id.* at 352. Similarly, in *Comcast*, the Supreme Court instructed that courts may not "refus[e] to entertain arguments against [a] damages

model that [bear] on the propriety of class certification … simply because those arguments would also be pertinent to the merits determination." 569 U.S. at 34.

## B. The District Court Failed To Resolve Disputes That Relate To Rule 23's Requirements

Conflating admissibility with Rule 23's certification requirements, the district court sidestepped disputes about whether hedonic regression is capable of calculating a price premium in this case and thus whether it can serve as "common evidence" of class members' injury. The court left unaddressed the parties' disputes about what preconditions are required for hedonic regression to calculate a price premium and whether those preconditions exist in the market for flushable wipes. *See supra* pp. 9-11, 14-15. In fact, the district court's only discussion of any of these predicates came in its *Daubert* analysis where it *refused* to decide whether the flushable wipes market is perfectly competitive. SPA161-162. Despite failing to resolve any of these disputes when addressing admissibility, the court then relied exclusively on its admissibility discussion to conclude that Kurtz had presented evidence that "sufficiently demonstrates that common evidence can prove causation and injury." SPA164. It thus circumvented its obligation to "resolve[] factual disputes" that are relevant to class certification. *IPO*, 471 F.3d at 41.

The court similarly refused to address the defendants' arguments that Mr. Weir's model fails to isolate a premium attributable to *flushability* (as opposed

to other product attributes) and Dr. Martin's criticism that Mr. Weir's model cannot calculate a premium for *Costco*'s flushable wipes. The district court waived these challenges away, concluding that "[d]isagreement about Weir's judgments in developing and performing the model … are questions answerable by admitted evidence." SPA165. That misses the point. It is not enough for questions about the capacity of Mr. Weir's hedonic regression model to serve as common evidence of injury to be "answerable by admitted evidence," the district court must actually answer them now.

The Supreme Court has recognized that such predicate disputes must be resolved before class certification in *Erica P. John Fund v. Halliburton Company*, 563 U.S. 804 (2011). The Court noted that, in the securities fraud context, a plaintiff seeking to establish the reliance element of her securities fraud claim through common evidence will typically rely on the fraud-on-the-market theory. *Id.* at 810-11. In such cases, the Supreme Court has required "that market efficiency and the public nature of the alleged misrepresentations"—"essential predicates of the fraud-on-the-market theory"—"*be proved before* a securities-fraud class action can be certified." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 473 (2013) (emphasis added) (citing *Halliburton*). If those predicates are not proved, the Supreme Court reasoned, the "the fraud-on-the-market presumption" would be unwarranted and class members would be

reduced to proving class members' reliance by showing that each class member "was personally 'aware of [the defendant's] statement and engaged in a relevant transaction … based on that specific representation." *Id.* In that scenario, "[i]ndividualized reliance issues would predominate." *Id.* And as a result, "[t]he litigation … could not be certified under Rule 23(b)(3) as a class action." *Id.* at 473-74.[1]

So too here:  the *only* way Kurtz has offered to prove injury through common evidence is to use hedonic regression to establish a "price premium" for flushable wipes.  But as defendants' experts explained, hedonic regression simply cannot calculate a price premium that each class member paid for defendants' "flushable" wipes in this case.  *Supra* pp. 9-13.  And because Kurtz has offered no other means of proving the class's injury through common evidence, class members would be left to prove that they suffered an injury due to Costco's alleged misrepresentation on an individualized basis—for example, through

---

[1] In *Amgen* itself, the Supreme Court concluded that plaintiffs need not prove "materiality"—another essential predicate of the fraud-on-the-market presumption—before class certification.  But the Court did so only because the issue of materiality in a stock drop case always is common to the entire class and is an element of securities fraud, and thus any failure to prove materiality would necessarily doom *all* class members' claims.  *Amgen*, 568 U.S. at 473-74.  Here, in contrast, the failure of the class to prove that Mr. Weir's hedonic regression model is capable of measuring a premium for flushability on defendants' products would not prevent them from proving that they were injured by defendants' alleged misrepresentations on an individual basis.

evidence that they each suffered plumbing problems. Kurtz himself has conceded that individualized inquiries would be required to determine whether class members' suffered such injuries. Plf's Memo Opp. to Defs' Mots. To Deny Class Cert., D. Ct. Dkt. No. 119 at 48 (Kurtz conceding that there are "individual issues regarding causation of plumbing damages").[2]

In apparent support of its view that it need not resolve these issues, the district court noted that a handful of other district "courts have certified classes of consumers with similar evidence." SPA164-165 (citing cases). But those cases provide no support for what the court did here. None of them involved expert evidence showing that the essential predicates for hedonic regression to calculate a price premium do not exist, let alone a concession by the plaintiff's expert (like Mr. Weir's here, A3042-3043) that the perfect competition requirement was not met. And in many, the plaintiffs had *other* evidence—not just hedonic regression—showing the existence of a price premium. *E.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1111 (N.D. Cal. 2018) (declining to rule on

---

[2] Individual issues would also proliferate because class members could try to individually prove—without the benefit of hedonic regression—that they personally paid more than they would have been willing to pay if the wipes had not been labeled flushable. *E.g., Enzinna v. D'Youville College*, 34 Misc.3d 1223(A), *4 (N.Y. Sup. Ct. 2010) (plaintiffs individually "alleged that they each were induced to part with over $100,000 in tuition by defendant's alleged misrepresentations").

criticism of Mr. Weir's hedonic regression because plaintiffs' other expert satisfied *Comcast* with a conjoint analysis); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 403, 413-14 (S.D.N.Y. 2015) (defendants' own "internal documents suggest[ed] the existence of a premium"); *Ebin v. Kangadis Food*, No. 13 Civ. 2311, 2014 WL 737878, at *2 (S.D.N.Y. Feb. 25, 2014) (plaintiffs submitted evidence— "admissible raw data"—strongly supporting the existence of a premium).

## III. UNDER THE CORRECT STANDARD, KURTZ FAILED TO PROVE THAT COMMON ISSUES PREDOMINATE

"[B]efore a district court may certify a class under Rule 23(b)(3) the party seeking certification must show that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018). To establish predominance, the proponent of class certification must show that "'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,' and 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* at 97.

When the disputes regarding Kurtz's evidence are properly resolved, Kurtz's case flunks Rule 23(b)(3)'s predominance test for at least two independent reasons First, Kurtz has no evidence that injury can be proved through common evidence. And second, Kurtz has no evidence that causation can be proved through common

evidence.  Without that, individual issues on those elements predominate over any common ones.

## A.    Individual Issues Of Injury Will Predominate

Kurtz's regression evidence fails to show that Kurtz can prove injury through common evidence for three reasons: First, hedonic regression cannot calculate a price premium because the essential predicates of that mathematical proof are not satisfied.  Second, at best, Mr. Weir's hedonic regression calculates an average relationship between "flushable" and price across all retailers, brands, and products in his dataset.  Third, Mr. Weir's model fails to isolate injury attribute to Kurtz's theory of Costco's liability.

### 1.    *The essential predicates of hedonic regression are not met*

In order for hedonic regression to calculate a price premium for a product attribute, three conditions must be met.  None of them are satisfied here.

***First***, the flushable wipes market is "imperfectly competitive."  A3575; CA1364-1365.  Rather than having lots of firms that are producing homogenous products and are taking whatever prices they can get, it has relatively few participants that are producing differentiated products and can price strategically.  CA1364-1365.  This failure in and of itself renders hedonic regression incapable of calculating a price premium here.

Mr. Weir conceded that the market for flushable wipes is not perfectly competitive, A3042-3043, but claimed that perfect competition is not required. In particular, Mr. Weir claimed that "updated literature" says that "many of these original assumptions can be relaxed and still obtain reliable results" and so he "would not suggest that perfect competition is a requirement for running a hedonic model." A3042. But significantly, Mr. Weir identified no support for this claim—the notion that hedonic regression can identify a *price premium* unless the market is perfectly competitive. A3567. And as Dr. Martin explained, that is a mathematical impossibility. A3567. The hedonic regression that Mr. Weir employed is based on a "mathematical proof" that only holds when the analyzed market is perfectly competitive. A3567. "[I]t's not possible to relax these assumptions and interpret that coefficient as a price premium." A3567.

In the district court, Mr. Weir cited academic articles applying hedonic regression to product attributes in consumer markets. But this just underscores the need for the district court to address the parties' dispute about the necessity of perfect competition. Costco explained why none of these articles supported Mr. Weir's use of hedonic regression in this case. Some of them assumed or found that the perfect competition requirement was satisfied. CA1299 & nn.21-22. For example, Mr. Weir relied on an article that used hedonic regression to calculate what consumers would pay for all natural and organic yogurt and milk, but

admitted that the article assumed that the yogurt and milk markets are perfectly competitive.  A3040-3041; A2768-2780; CA1299.  Others relied on actual market data for a product with the attribute of interest and the same product without the attribute of interest.  CA1296 & n.17; CA1298 & n.20.  And the remaining articles merely sought to measure a theoretical price "impact," not an actual price premium.  CA1299 & nn.23-24; A3568.  Yet, the district court left the resolution of this dispute to the jury.

*Second*, the "flushable" attribute is not cleanly defined.  Flushability is not a "binary" term like "tin" or steel."  A3571.  It is like the term "tough," which is too ambiguous for hedonic regression to produce an associated price premium.  A3574.  Just as there are degrees of toughness, there are degrees of flushability.  As a result, "flushable" is not an attribute that is susceptible to hedonic regression's price premium calculation.

Mr. Weir claimed that the "flushable" attribute is easily defined because he defined it as whether the product bears a "flushable" claim.  A3577.  But as Dr. Martin explained, simply ignoring a term's ambiguity does not solve the problem.  By using the "flushable" label as a proxy for the products' flushability, Mr. Weir erroneously lumps together the value that is attributable to whether the wipes are flushable by plaintiff's standard (whatever that is), with the value that is

attributable to the wipes being flushable to some other or lesser degree. A3577-3578; CA1367-1368.

The district court responded that defendants' arguments that "the inability to define 'flushable'" "undermine[d] the reliability of Weir's analysis" had "already been considered and rejected by [the] court" in its prior certification decision. SPA162. But that decision did not address this issue. There, the court concluded that individualized issues of whether the "flushable" representation materially misled class members would not predominate because materiality is judged under the objective reasonable consumer test. SPA81-83, SPA122. But plaintiff's obligation to isolate injury attributable to his theory of liability has nothing to do with the reasonable consumer standard. Even assuming there is a single meaning of "flushable" that reasonable consumers share, plaintiff still must show that his hedonic regression model measures only the injury attributable to Costco's wrongdoing.

***Third***, there is perfect collinearity in any data needed to calculate a price premium on *Costco*'s flushable wipes. When a hedonic regression is run on Costco's sales data—the most logical dataset to use to calculate a Costco-specific premium—it fails. A3580-3581. It cannot calculate a coefficient for the "flushable" attribute at all. A3584-3585. That is because the "flushable" attribute is perfectly collinear with the "baby/toddler" attribute in Costco's data, meaning

that all flushable products at Coscto are not baby/toddler products, and all baby/toddler products are nonflushable. CA1345; A3584-3585. That means that the hedonic regression cannot explain if any price difference is based on the flushable attribute or the baby/toddler attribute.

Kurtz claimed that Mr. Weir avoided the perfect collinearity problem by merging Costco's sales data with IRI data, which includes products with greater variability. But as Dr. Martin explained—and Mr. Weir never refuted—the merger does not solve the problem. A3637-3638; A3642; A3646-3647. When Mr. Weir's model is run on the merged dataset it produces, at best, an *average* effect on price across the entire dataset—that is, across *all* retailers, brands, and products—not just Costco's products. A3564, A3587. As discussed below, this average does not indicate that *any* class member that purchased Costco's flushable wipes paid a premium, let alone that *every* such class member did. *See infra* pp. 30-34. To calculate a Costco-specific price premium, Mr. Weir would have needed to create what is known as an "interaction term"—that is, a variable that captures products that are both flushable and sold at Costco. A3637; A3642. But when Mr. Weir's model is run with such an interaction term it fails due to the same problem of perfect collinearity that exists in the Costco data. A3637-3638.

## 2. At best, Mr. Weir's model calculates an "average" relationship between "flushability" and price across all retailers, brands, and products

To satisfy Rule 23(b)(3)'s predominance requirement, Kurtz "must … show that [he] can prove, through common evidence, that all class members were in fact injured." *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL, No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013). Mr. Weir's hedonic regression analyses—the only "common evidence" of injury that Kurtz offered—show no such thing. As Dr. Martin explained, it is "[e]conometrics 101" that the "coefficient" that "you get out of the regression" is "an average effect across all of the data." A3588. Because Mr. Weir merged Costco's data with IRI data, his model measured (at best) an average relationship between "flushability" and price for all retailers, brands, and products included in that merged dataset. A3587. Because it is an average, it does not establish that every individual consumer paid a premium, much less that every retailer charged one. Some retailers may have charged premiums, while others charged none. A3588.

Courts have recognized that such "average" or "aggregate" determinations are insufficient to show that the *class members*' experiences can be determined through common evidence. In *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 322 (4th Cir. 2006), for example, the plaintiffs claimed that the defendant's statute of limitations defense—which turned on when class members became aware of the

defendant's allegedly discriminatory practices—could "be resolved on a class-wide basis" because their expert's report concluded that "the public, or the average citizen of the United States … was not generally aware of [these] practices." *Id.* The Fourth Circuit disagreed. It explained that

> [w]hether the 'average citizen' … was or was not 'generally aware' of insurance companies' dual-rate practices[] is … irrelevant to the question that the trier of fact will have to answer to resolve Jefferson–Pilot's statute of limitations defense on the merits: Were any of the *individual class members* aware, actually or constructively, outside of the limitations period that Jefferson–Pilot was treating him or her differently from white policyholders?

*Id.* Similarly, in *In re New Motor Vehicles Canadian Export Antitrust Litigation*, the First Circuit explained that the ability of the plaintiffs' damages model to "calculate the aggregate amount of damages" did not suffice to establish predominance because the plaintiffs have a "duty to prove each [class member] was harmed by defendants' practice." 522 F.3d 6, 28 (2006) (alteration in original).

The district court dismissed this issue, claiming that "[p]laintiffs have submitted proof that every consumer paid a percentage amount more for wipes labeled flushable … because of a marketwide price premium caused by the

flushable label." SPA166. But that conclusion is plainly incorrect.[3] Under the correct conditions and when properly applied, hedonic regression may be able to trace a price premium attributable to an attribute of interest. But not here: not only are the essential prerequisites for using hedonic regression in that way absent in the flushable wipes market, but Mr. Weir's model does not calculate a Costco-specific result. Mr. Weir claimed that he calculated "an aggregate number for the Costco class … for the Costco products" by employing a Costco control variable. A3031-3032. But as Dr. Martin explained, that variable only measures whether products—like Cottonelle products—are generally priced differently at Costco than they are at other retailers. A3587. It says "nothing about whether any premium was paid" for Costco's flushable wipes. A3646; A3587. And it is mathematically impossible to create the interaction term needed to generate a Costco-specific result. *Supra* p. 11.

The real-world evidence of Costco's pricing that Mr. Weir consciously ignored highlights the failure of his model to calculate a Costco-specific premium. Because the flushable wipes market is imperfectly competitive, Costco is able to

---

[3] It is also entitled to no deference. In *Comcast*, "[t]he dissent [was] of the view that what an econometric model proves is a 'question of fact.'" 568 U.S. at 36 n.5. The majority disagreed: "[W]hile the data contained within an econometric model may well be 'questions of fact' in the relevant sense, what those data prove is no more a question of fact than what our opinions hold." *Id.*

price strategically. Costco's pricing strategy is to "price low" in order to "create loyalty among members" and thereby encourage growth in membership. CA1359-1363; A3590, A3599. As the district court recognized, Costco prices its flushable wipes just like its other products: it determines the net costs of acquiring a product and adds a small margin capped at a specific threshold to set shelf price. A3610-3611; CA1359-1363; CA191-194. Given its pricing policy, it is unsurprising that the price per sheet for Costco's flushable wipes "is lower than 99 percent of the other products that are included in Mr. Weir's data." A3591-3592. But Mr. Weir's model nonetheless purports to calculate a price premium for Costco's flushable wipes that is *substantially larger* than the premium he claims other flushable-wipes producers charge. CA1308 *with* CA2093, A2308. This disproportionate result is exactly what one would expect from a model that is calculating an *average* premium across all retailers, brands, and products and then ascribing it to an underpriced retailer like Costco.[4]

---

[4] Dr. Martin explained that the 8% premium Mr. Weir claims Costco charges for "flushability" cannot be explained by the *manufacturer* charging a premium in its *wholesale* price because that is not what Mr. Weir's model purports to measure. A3608. Mr. Weir's model purports to calculate what the retail price for Costco's flushable wipes would be if they no longer bore a "flushable" label, but *everything else*—including the "costs" of production, the "price from [the] manufacturer," and the quality of the product—remained the same. A3608; A3610-3612.

The district court disregarded this evidence, concluding that it "does not negate the force of the regression as the court considers predominance." SPA167. But the district court never determined what "force" Mr. Weir's regression has since it refused to address defendants' arguments against it. *Supra* pp. 18-24. When those challenges are properly resolved, Mr. Weir's regression has no explanatory power at all. It is Kurtz's burden to prove by a "preponderance of the evidence" that he can establish injury through common evidence. *In re Vivendi, S.A. Securities Litig.*, 838 F.3d 223, 264 (2d Cir. 2016). Given the absence of any affirmative evidence that he can, and the plentiful expert and real-world evidence that he cannot, Kurtz failed to meet his burden.

### 3. Mr. Weir's model does not isolate injury attributable to Costco's alleged misrepresentation

In order to serve as common evidence of injury, Mr. Weir's model also must isolate any injury attributable to Costco's alleged wrongdoing. The Supreme Court's decision in *Comcast* illustrates this requirement. There, cable subscribers seeking class certification relied on a regression model that measured the impact of Comcast's allegedly anticompetitive activities, but "did not isolate damages resulting from any one [of the subscribers' four] theor[ies] of antitrust impact." *Comcast*, 569 U.S. at 30-32. On appeal, the court of appeals refused to consider Comcast's arguments that the model failed to isolate damages for sole remaining theory of liability because it believed that such an "attac[k] on the merits of the

methodology [had] no place in the class certification inquiry." *Id.* at 32.  The Supreme Court reversed, explaining that the court must address the challenges to the model, and that the model failed to establish predominance because it did not measure "only those damages attributable" to the plaintiff's operative theory of liability.  *Id.* at 35.  The Court explained that "a methodology that identifies damages that are not the result of the wrong" provides no "assurance" that individual issues will not predominate. *Id.* at 37.

Mr. Weir's model shares the same fatal flaw.  Kurtz's theory is that class members paid a premium because Costco falsely represented its wipes' flushability, not because it falsely represented their cleaning effectiveness, moistness, or thickness.  And the evidence presented shows that consumers value these non-flushable attributes that are correlated with flushability even more than flushability.  CA196-197; A3106-3107; A3181.  Yet Mr. Weir's model omits these attributes as variables.  As a result, "[a]ny effect of these excluded attributes on price will be erroneously attributed to the presence of the 'Flushable' label." CA1369.  Because Mr. Weir's model is unable "to bridge the differences" between premiums charged for cleaning effectiveness, moistness, and thickness and premiums "attributable to" the "flushable" representation, it provides no "assurance" that individual injury issues will not predominate. *Comcast*, 569 U.S. at 37-38.

The district court rejected defendants' analogy to *Comcast* because Mr. Weir's model supposedly matches "Plaintiffs' *single* theory of the case that consumers paid more for flushable toilet wipes because of the flushable label." SPA165 (emphasis in original). But there is no such match because Mr. Weir's omission of important product attributes that are correlated with flushability means that the "premium" he calculates for flushability necessarily captures the value of those unchallenged attributes. CA1368-1369. It is irrelevant that Kurtz asserted a *single* theory of liability, rather than four like the plaintiffs in *Comcast*. An econometric model that fails to isolate the injury attributable to the plaintiff's operative theory of liability provides no assurance of predominance regardless of the number of theories the plaintiff started with.

In the district court, Mr. Weir claimed that all of these attributes were controlled for by a "brand" variable in his model. But that makes no "economic sense" because consumers themselves place distinct value on brand and other attributes, like cleaning effectiveness. A3208; A3118. Mr. Weir did not even take his own theory of the "brand" variable seriously. If he had, there would have been no need for his model to include any explanatory variables other than "flushable" and price because the omitted variables could all be controlled for by "brand." A3208. But as Mr. Weir's inclusion of other product attributes implicitly recognizes, that is not how hedonic regression works. In order to even potentially

calculate a premium attributable to flushability, Mr. Weir's model needed to include variables for other product attributes that are correlated with the attribute of interest. CA1351, CA1353, CA1368-1369. Because it did not do so, it erroneously ascribes those other attributes' effect on price to the "flushable" representation. CA1351, CA1353, CA1368-1369.

The inability of Mr. Weir's model to calculate a premium attributable to flushability is confirmed by the fact that small, sensible adjustments to the model cause the illusory premium to disappear. When Dr. Martin ran Mr. Weir's model using Mr. Weir's dataset but excluding small, expensive travel packs that are not comparable to Costco's bulk products, the model not surprisingly generated a *negative* coefficient for the "flushable" attribute. A3593. When Dr. Ugone added a control variable for whether products were "hand/face" wipes to account for the effect of that attribute on price, the change "completely eliminate[d] Mr. Weir's claimed price premium." CA1443-1444. And when Dr. Ugone and Dr. Scott ran Mr. Weir's model over the actual certified class period—rather than Mr. Weir's cherry-picked time period—it resulted in no price premium. CA1444-1447; A3368-3370. That Mr. Weir's "premium" cannot withstand such small, sensible adjustment only confirms that his model cannot serve as the common evidence of injury that the class would need.

Nor does it matter that the district court observed that Mr. Weir found "high degrees of statistical significance" when running his model. SPA163. To be probative, statistical significance requires the model's underlying premises or assumptions to be trustworthy. For example, in *United States v. Arenas-Ortiz*, the Ninth Circuit rejected the defendant's expert's finding of "statistically significant evidence of selective prosecution" of Hispanic male aliens where the expert's underlying assumptions about prison populations and deportation rates were "fatally flawed." 339 F.3d 1066, 1069 (2003). Given its omission of obviously significant product attributes, Mr. Weir's model is "so seriously flawed as to negate [Mr. Weir's] suggestions of statistical significance." *Pegues v. Miss. State Employment Serv.*, 699 F.2d 760, 770 (5th Cir. 1983).

## B. Individual Issues Of Loss Causation Will Predominate

Kurtz also failed to satisfy his burden of proving that individual issues of loss causation will not predominate. *In re Vivendi,* 838 F.3d at 264 ("[I]t was Plaintiffs' burden to establish, by a preponderance of the evidence, that its proposed class met the requirements of Rule 23."). Under New York's General Business Law, a plaintiff must establish loss causation—that is, "that they have suffered actual injury caused by a materially misleading or deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623 (N.Y. 2009). In its remand order, this Court voiced its "specific concern" that

plaintiffs could not establish the "causation element[] of their claims at trial with common evidence." Summary Order 4, Dkt. 971-1. Despite that concern, Kurtz submitted *no* additional evidence of how causation can be proved on a common basis.

As with injury, the district court nonetheless held that Mr. Weir's hedonic regression analyses "sufficiently demonstrates that common evidence can prove causation." SPA164. But that is wrong. Mr. Weir himself admitted that hedonic regression alone provides no evidence of causation. A3023. Rather, he conceded that an "economic theory" is required to bridge the gap between correlation and causation. A3023. Mr. Weir, who is not an economist, offered none.

While Mr. Weir did opine that it "seems illogical" for a producer not to charge a premium for an "important" attribute, A3346, Mr. Weir's hunch is not the evidence that Rule 23 requires. "Intuitive appeal" of an unsubstantiated assumption "is not enough." *In re New Motor Vehicles,* 522 F.3d at 25, 29. In any event, as Dr. Martin—who is an economist—explained, Mr. Weir's "logic" is a false one. In reality, retailers often choose not to charge a price premium for attributes that consumers prefer, such as when "[r]etailers use a strategy" known as "line pricing" where 'all the products in a given line are priced identically." A3561-3562. For example, consumers may be willing to pay more for regular cola than for black cherry cola. A3561-3562. Intuition would thus suggest that regular

cola should be "priced higher than black cherry soda." A3561-3562. But in reality, "they are all priced the same" because retailers use "line pricing" to price "all products in a given line … identically." A3561-3562.

In any event, even if one could assume defendants charged a premium for their flushable wipes, this still fails to show that individual issues of causation will not predominate. As Costco explained in its original appeal briefs, if the class members in a but-for world would have purchased equally or more expensive products then they were not harmed by the higher price. Costco Br. 47-54; Costco Reply 19-26. Inquiries into what each class member would have done in the absence of defendants' alleged misrepresentations will necessarily be individualized. *UFCW Local 1776 v. Eli Lilly*, 620 F.3d 121, 134-35 (2d Cir. 2010); *McLaughlin v. Am. Tobacco*, 522 F.3d 215, 226-28 (2d Cir. 2008), abrogated on other grounds by *Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639 (2008). And neither hedonic regression nor Mr. Weir's assumption that producers must charge higher prices for important product attributes obviates the need for such inquiries.

## CONCLUSION

The district court's class certification order should be reversed.

Dated:  January 10, 2020                    Respectfully submitted,


                                            s/ Brian R. Matsui
                                            BRIAN R. MATSUI
                                            MORRISON & FOERSTER LLP
                                            2000 Pennsylvania Avenue, NW
                                            Washington, DC 20006
                                            Telephone: (202) 887-8784
                                            BMatsui@mofo.com

                                            ADAM J. HUNT
                                            LENA H. HUGHES
                                            MORRISON & FOERSTER LLP
                                            250 West 55th Street
                                            New York, NY 10019
                                            Telephone: (212) 468-8000

                                            *Counsel for Defendant-Appellant*
                                            *Costco Wholesale Corporation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Court's November 12, 2019 Order because it contains 8,945 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) and Second Circuit Rule 32.1(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016, in 14-point Times New Roman font.

Dated: January 10, 2020                                    s/ Brian R. Matsui
                                                       _____

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system on January 10, 2020.

I certify that all case participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 10, 2020            _____ s/ Brian R. Matsui _____

ny-1810711

# SPECIAL APPENDIX

# TABLE OF CONTENTS

**Page**

Memorandum & Order Certifying Class Actions
(March 27, 2017) .................................................. SPA-1

N.Y. Gen. Bus. Law § 349 ......................................... SPA-136

N.Y. Gen. Bus. Law § 350......................................... SPA-138

N.Y. Gen. Bus. Law § 350-e...................................... SPA-139

Memorandum & Order on Remand
(October 25, 2019).................................................. SPA-140

SPA-140

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| D. JOSEPH KURTZ, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>– against –<br><br>KIMBERLY-CLARK CORPORATION & COSTCO WHOLESALE CORPORATION,<br><br>               Defendants. | **MEMORANDUM & ORDER ON REMAND**<br><br><br>14-CV-1142 |
| ANTHONY BELFIORE, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>– against –<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>               Defendant. | 14-CV-4090 |

**Parties:**

For Plaintiff D. Joseph Kurtz

For Plaintiff Anthony Belfiore

**Appearances:**

Mark S. Reich
Vincent Serra
Magdalene Economou
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747

Lester L. Levy
Matthew Insley-Pruitt
Sean M. Zaroogian
Wolf Popper LLP
845 Third Avenue
New York, NY 10022

1

For Defendant Kimberly-Clark Corporation

Eamon Paul Joyce
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Kara L. McCall
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

For Defendant Costco Wholesale Corporation

James M. Bergin
Adam J. Hunt
Morison & Foerster LLP
250 West 55th Street
New York, NY 10019

Brian R. Matsui
Morrison & Foerster LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006

For Defendant The Procter & Gamble Company

Harold P. Weinberger
Eileen M. Patt
Ryan Gander
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Cortlin H. Lannin
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105

**JACK B. WEINSTEIN, Senior United States District Judge:**

I. Introduction ................................................................................................................... 1

II. Background ................................................................................................................... 3

    A.        Plaintiffs and Their Claims ...................................................................... 3

    B.        March 2017 Class Certification Decision and Subsequent Appeal ............ 4

    C.        Remand to District Court; Subsequent Proceedings; Experts ................... 5

       1.     Colin B. Weir ........................................................................... 6

       2.     Dr. Keith R. Ugone ................................................................ 14

       3.     Dr. Denise Martin .................................................................. 16

       4.     Dr. Carol A. Scott .................................................................. 17

III. Admissibility of Expert Testimony .......................................................................... 18

    A.        Colin B. Weir ........................................................................................ 19

    B.        Dr. Keith Ugone .................................................................................... 22

IV. Predominance ........................................................................................................... 22

V. Conclusion ................................................................................................................. 27

    **I. Introduction**

        Widely scattered about the country, individual consumers and other actors, including

municipalities, have sued the retailers and manufacturers of "flushable" toilet wipes—moist

towelettes intended for use in place of, or in addition to, toilet paper.  They allege that the toilet

wipes are not flushable as advertised.

        In the present litigation, plaintiffs are consumers.  Plaintiff Kurtz and Plaintiff Belfiore

(collectively, "Plaintiffs") brought suit against Kimberly-Clark Corporation ("Kimberly-Clark"),

Costco Wholesale Corporation ("Costco"), and The Procter & Gamble Company ("Procter &

Gamble," and collectively with Kimberly-Clark and Costco, "Defendants") in 2014, alleging a

host of causes of action.

        In December 2017, this court certified injunctive relief and damages classes of New York

consumers who alleged a violation of New York State consumer law.  Defendants appealed.

After briefing and oral argument, the Court of Appeals for the Second Circuit remanded a critical damages issue to this court:

> In particular, we note our specific concern with the Plaintiffs' proof that they can establish the injury and causation elements of their claims at trial with common evidence. . . . On remand, the district court should offer the parties the opportunity to submit additional evidence and should then assess whether the Plaintiffs have 'affirmatively demonstrated [their] compliance' with Rule 23(b)(3)'s predominance requirement. . . . After further review of the record, the district court should choose whether to decertify the damages classes or maintain the current certification orders.

*Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 41 (2d Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (alteration in original)).

This court, having held substantial post-mandate evidentiary hearings with extensive evidence and briefs, concludes that its current certification orders are appropriate.

Plaintiffs prepared and provided to this court expert reports opining that there is a marketwide price premium for wipes labeled as flushable. Their expert developed and performed hedonic regression analyses to arrive at this conclusion. Each of Defendants' experts has advanced a litany of alleged problems with Plaintiffs' expert's regression theory and his actual computation, including his attempts to meet Defendants' experts' criticisms.

The post-mandate evidentiary hearing was conducted over four days, during which four experts testified. Plaintiffs' expert was credible and demonstrated his methodology to be reliable. Defendants' experts' criticisms were unpersuasive as to the issue before the court—whether Plaintiffs can demonstrate causation and injury by common evidence.

Following post-hearing briefing and oral argument, the parties' motions to exclude opponents' experts are rejected under the Federal Rules of Evidence. As to the class certification issue, Plaintiffs have met their burden and demonstrated that the injury and causation elements of their claims can be proven with common evidence.

Individual issues are not a basis for denying certification.  Common issues predominate.
This court renews its prior certification of the classes under Federal Rule of Civil Procedure
23(b)(3) for the reasons set out below.

## II. Background

### A. Plaintiffs and Their Claims

The facts underlying these litigations are discussed at length in the court's decision
certifying the classes.  *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 508–20 (E.D.N.Y.
2017).  In sum, Plaintiffs Belfiore and Kurtz allege that they purchased flushable toilet wipes
manufactured or sold by Defendants that are not flushable even though they are advertised and
labeled as having the characteristic of flushability.  *Id.* at 493.  Plaintiff Belfiore purchased
Charmin Freshmates, manufactured by Defendant Procter & Gamble.  *Id.* at 508.  Plaintiff Kurtz
purchased Defendant Kimberly-Clark's Cottonelle wipes and Defendant Costco's Kirkland
flushable wipes.  *Id.*  Plaintiffs claim that they paid more than they should have for the wipes
because they were advertised as being flushable and are not.  *Id.* at 493.

At this juncture of the litigation, at issue are claims brought under New York's consumer
protection statutes, General Business Law Sections 349 and 350.  *Id.* at 525–26.  New York
General Business Law Section 349 prohibits deceptive acts in the conduct of any business, trade,
or commerce.  N.Y. Gen. Bus. Law § 349(a).  New York General Business Law Section 350
prohibits false advertising in the conduct of any business, trade, or commerce.  *Id.* § 350.  For
their claims to succeed, Plaintiffs must prove that each defendant has engaged in consumer-
oriented conduct that is materially misleading and that they suffered an injury as a result.  *Koch
v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012); *City of New York v. Smokes-
Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *see also In re Scotts EZ Seed Litig.*, 304
F.R.D. 397, 409 (S.D.N.Y. 2015).  Conduct is materially misleading if it makes representations

or omissions that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (internal quotation marks and citations omitted); *see also Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

Suit was also brought under New York State common law.  These claims are irrelevant for purposes of class certification.

**B.  March 2017 Class Certification Decision and Subsequent Appeal**

Following extensive briefing and multiple hearings, in 2017, this court certified three classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

1. "All persons and entities who purchased Charmin Freshmates in the State of New York between May 23, 2011 and March 1, 2017." *Kurtz*, 321 F.R.D. at 554–55.

2. "All persons and entities who purchased Kimberly-Clark Flushable Products in the State of New York between February 21, 2008 and March 1, 2017." *Id.* at 555. "Kimberly-Clark Flushable Wipes" are flushable, moist wipe products sold under the Cottonelle, Scott, Huggies, PullUps, U by Kotex, and Poise brands. *Id.* at 527.

3. "All persons and entities who purchased Kirkland Signature Flushable Wipes in the State of New York between July 1, 2011 and March 1, 2017." *Id.* at 555.

This court concluded that the requirements of Rules 23(b)(2) and 23(b)(3) were met. *Id.* at 527–54.  The decision was made, in part, in reliance on Plaintiffs' expert Colin B. Weir's reports explaining his price premium damages model, which relied on a hedonic regression analysis. *Id.* at 550 ("The defendants challenge Mr. Weir's premium damages model as insufficient to establish classwide injury or causation. . . .  The model is sufficient for certification." (internal citations omitted)).

4

An interlocutory appeal was filed.  Defendants argued, among other matters, that

Plaintiffs had not met their burden of showing that common issues will predominate because

they had not demonstrated that they can establish injury and causation by common proof.  *Kurtz*,

768 F. App'x at 40.  In particular, Defendants contended that Plaintiffs' allegation that Weir

could prove causation and injury using a hedonic regression analysis—common evidence—was

not sufficient proof of compliance with Rule 23(b)(3)'s predominance requirement that questions

of law or fact common to class members predominate over any questions affecting only

individual class members.  *Id.*

Concluding that the record at that time did not allow the Court of Appeals to determine

whether Defendants' predominance argument had merit, the case was remanded to the district

court to "offer the parties the opportunity to submit additional evidence and . . . then assess

whether Plaintiffs have 'affirmatively demonstrated [their] compliance' with Rule 23(b)(3)'s

predominance requirement."  *Id.* at 41 (quoting *Wal-Mart*, 564 U.S. at 350 (alteration in

original)).

### C.  Remand to District Court; Subsequent Proceedings; Experts

Upon remand, this court scheduled an evidentiary hearing.  *See* Order, 14-cv-1142, ECF

No. 311.  The hearing was adjourned to allow the parties time to conduct discovery and obtain

expert analyses.  *See* Order, 14-cv-1142, ECF No. 325.  Discovery on the issues was allowed.

*See* Scheduling Order, 14-cv-1142 (July 8, 2019).

Plaintiffs submitted to the court three expert reports from Weir, one for each defendant.

*See* Suppl. Decl. Kimberly-Clark Colin B. Weir, 14-cv-1142, ECF No. 377 ("Weir Suppl. Decl.

Kimberly-Clark") (filed under seal as Suppl. Decl. Kimberly-Clark Colin B. Weir, 14-cv-1142,

ECF No. 337); Suppl. Decl. Costco Colin B. Weir, 14-cv-1142, ECF No. 378 ("Weir Suppl.

Decl. Costco") (filed under seal as Suppl. Decl. Costco Colin B. Weir, 14-cv-1142, ECF No.

339-1); Suppl. Decl. Procter & Gamble Colin B. Weir, 14-cv-4090, ECF No. 329 ("Weir Suppl. Decl. Procter & Gamble") (filed under seal as Suppl. Decl. Procter & Gamble Colin B. Weir, 14-cv-4090, ECF No. 295-1).

Defendants submitted rebuttal reports. Suppl. Rebuttal Decl. Keith R. Ugone, Ph.D., 14-cv-1142, ECF No. 376 ("Kimberly-Clark Ugone Suppl. Decl.") (filed under seal as Suppl. Rebuttal Decl. Keith R. Ugone, Ph.D., 14-cv-1142, ECF No. 344); Suppl. Expert Report Denise Martin, Ph.D., 14-cv-1142, ECF No. 380 ("Costco Martin Suppl. Decl.") (filed under seal as Suppl. Expert Report Denise Martin, Ph.D., 14-cv-1142, ECF No. 342-1); Expert Report Carol A. Scott, Ph.D., No. 14-cv-4090, ECF No. 328 ("Procter & Gamble Scott Suppl. Decl.") (filed under seal as Expert Report Carol A. Scott, Ph.D., No. 14-cv-4090, ECF No. 301); Errata to Expert Report Carol A. Scott, Ph.D., dated July 26, 2019, ECF No. 300-1.

A full evidentiary hearing was conducted beginning on August 6, 2019. *See* Evid. Hr'g Tr. Each expert testified, as did a fact witness for Defendant Kimberly-Clark, Ken Champa. Champa is senior brand manager for Kimberly-Clark's Cottonelle brand; he testified about Kimberly-Clark third party data usage, pricing of Kimberly-Clark flushable wipes products, competition for those products, consumer purchase motivations, and product and packaging changes. *See id.* 238:16–330:20. The experts' reports and their testimony is described below.

### 1. Colin B. Weir

Weir is Vice President at Economics and Technology, Inc. ("ETI"), "a research and consulting firm specializing in economics, statistics, regulation and public policy." Weir Suppl. Decl. Kimberly-Clark 1; Weir Suppl. Decl. Costco 1; Weir Suppl. Decl. Procter & Gamble 1. He holds an M.B.A., with honors, from the High Technology Program at Northeastern University and a B.A. cum laude in business economics from The College of Wooster. *Id.* Prior to joining ETI, he worked at Stop and Shop Supermarkets for seven years, as head of a cash

department, grocery/receiving clerk, and price-file maintenance head.  *Id.*  Since joining ETI, he

has consulted on a number of consumer and wholesale products matters.  *Id.*  Weir has provided

expert testimony before federal and state courts, the Federal Communications Commission, and

state regulatory commissions.  *Id.*

During the pre-remand class certification proceedings, Weir submitted expert reports

proposing three damages models: (1) full compensatory damages, (2) statutory price premium

damages, and (3) statutory damages.  *Kurtz*, 321 F.R.D. at 523.  In those reports, Weir

"propose[d] using hedonic regression analysis, a tool that purports to measure the value of

various product attributes in order to demonstrate the existence of, and to isolate the amount of, a

price premium attributable to [D]efendants' use of 'flushable' in merchandising."  *Id.*  At that

time, Weir proposed relying on evidence from Defendants, industry resources, and independent

market research data; he provided a preliminary list of product attributes on which he would rely

to run his analysis.  *Id.*

Weir carried out his proposed hedonic regression analysis after remand.  As detailed in

his reports and during the evidentiary hearing, this entailed several steps.

*First*, Weir collected two types of data: sales data and product attribute data.  Sales data

was gathered from several sources.  Weir obtained from IRI weekly sales of flushable wipes,

other wipes, and toilet tissue from February 2010 through May 2019 in New York State.  Weir

Suppl. Decl. Kimberly-Clark ¶ 46; Weir Suppl. Decl. Costco ¶ 47; Weir Suppl. Decl. Procter &

Gamble ¶ 44.  IRI is a market research company that collects sales data from retailers and makes

that data available to companies and market researchers.  *See* Evid. Hr'g Tr. 15:13–21; *see also*

About Us, *IRI*, https://www.iriworldwide.com/en-US/Company/About-Us (last visited Oct. 24,

2019) ("IRI integrates the world's largest set of otherwise disconnected purchase, media, social,

causal and loyalty data to help [consumer packaged goods], retail, over-the-counter health care and media companies grow their businesses."). Another company, Nielsen, operates in the market research business and competes with IRI. *See* Evid. Hr'g Tr. 17:17–25. Third party market research of this kind is generally relied on by Defendants. *Id.* 16:10–23; Weir Suppl. Decl. Kimberly-Clark ¶ 47; Weir Suppl. Decl. Costco ¶ 48; Weir Suppl. Decl. Procter & Gamble ¶ 45. In Weir's extensive experience "major businesses in the United States either use Nielsen or IRI data on a routine basis." Evid. Hr'g Tr. 18:1–12.

Weir obtained data from IRI for nationwide products after conducting product research, including a review of top selling brands of wipes and of product labels with label claims useful for a comparison. *Id.* 31:4–32:17, 33:18–34:12. He chose the same products as he did for the hedonic regression analysis he had performed in a flushable wipes consumer action brought against Defendant Procter & Gamble in the United States District Court for the Northern District of California, *Pettit v. Procter & Gamble Company*, No. 15-cv-2150, since the products used in that analysis were sold nationwide. Evid. Hr'g Tr. 31:4–32:17. He received statistical results that satisfied him as an expert that the data was appropriate for use in New York. *Id.* Weir noted that his statistical analysis does not require the inclusion of data for every product to arrive at "a statistically reliable result[.]" *Id.* 20:16–21. Most IRI sales data is at the level of actual, individual transactions obtained from retailers, while about 15% of the sales is estimated by IRI. *Id.* 18:13–25. The identity of private label products is generally masked. *Id.* 19:1–15. Weir properly confirmed the accuracy of the IRI data prior to using it:

> Q What did you do to confirm that the IRI data was accurate?
>
> A I looked at a number of indicia of the IRI data including its use by companies generally and defendants in this case. I looked at information provided by IRI to understand their data collection methods. There are other data sources, I think this is now going back five years so I apologize that my memory may not be perfect, but

there were other sources of data against which I was able to compare
the IRI data to determine that they were in agreement across multiple
sources.

Q So what sources of data did you compare [with] the IRI data you
used?

A There were, and I haven't looked at them recently, but there were
other sales data that were provided to me back in 2015 against which
I was able to compare the then current IRI data.

*Id.* 147:25–148:15.

Also obtained by Weir was sales data from online retailers Amazon.com and

Drugstore.com and internal transaction-level data and coupon discount data from Defendant

Costco.  Weir Suppl. Decl. Kimberly-Clark ¶ 48; Weir Suppl. Decl. Costco ¶¶ 49, 51; Weir

Suppl. Decl. Procter & Gamble ¶ 46.  Weir explained in his reports that he obtained Nielsen

market research data from Kimberly-Clark and Procter & Gamble; this material was not

challenged at the hearing.  Kimberly-Clark Weir Suppl. Decl. ¶ 49; Weir Suppl. Decl. Procter &

Gamble ¶ 47.

The second type of data Weir obtained was product attribute data—information about

what characteristics products claim, *e.g.*, flushability and number of sheets per package.  Weir

obtained and reviewed product labels in gathering this data.  Evid. Hr'g Tr. 15:22–16:4.  He did

not obtain all historic label data, because, in his experience as an expert, that is not necessary

when the attribute of interest is constant; he determined the flushable label is constant here.  *Id.*

28:2–23, 38:5–12.  He also obtained product attribute data from IRI.  *Id.* 15:22–16:4.

*Second*, Weir prepared the data for use in a hedonic regression analysis.  For Defendants

Kimberly-Clark and Procter & Gamble, he used information from IRI for the necessary sales

data.  *Id.* 22:7–15.  Although other data was available and it is "technically possible that it could

be incorporated into the analysis," he claimed, the litigation schedule did not afford him the time

to include the additional data.  *Id.* 22:13–15.  For Defendant Costco, Weir used IRI and Costco

sales data.  Weir Suppl. Decl. Costco ¶ 57.  These decisions by him had the effect of excluding

all private label products for Defendants Kimberly-Clark and Procter & Gamble and private label

products other than Costco's for Defendant Costco.  Weir testified that this does not affect the

robustness of the methodology, "[b]oth because of [his] past experience showing that inclusion

of such products does not have a material result when they are included, but also because if you

look at peer-reviewed literature you will see many people studying products but that don't

include private label brands."  Evid. Hr'g Tr. 762:1–6.

    For each defendant, Weir integrated the sales data with product attribute information.

Weir Suppl. Decl. Kimberly-Clark ¶ 55; Weir Suppl. Decl. Costco ¶ 57; Weir Suppl. Decl.

Procter & Gamble ¶ 53.  He identified "top-selling products representing a majority of the sales

identified by IRI," obtained labels for those products, and generated a spreadsheet of

manufacturer claims on the product labels and other product claimed attributes.  *Id.*  Weir had

engaged in essentially the same analysis in *Pettit v. Procter & Gamble Company*.  *Id.*  He

utilized in the instant litigation the data set of product attributes he prepared in that Northern

District of California case.  *Id.*  For Defendant Costco, product label and attribute information

from products sold at Costco were added to this data set.  Weir Suppl. Decl. Costco ¶ 57.

    He identified the following product attributes as variables to be used in the hedonic

regression analysis: (1) "flushable" claims, (2) brand, (3) number of sheets, (4) number of packs,

(5) wipe area, (6) package type, (7) baby & toddler/adult, (8) travel pack, (9) alcohol free,

(10) hypoallergenic, (11) aloe & vitamin E, (12) fragrance/scent, (13) natural claims, and

(14) sensitive/gentle claims.  Weir Suppl. Decl. Kimberly-Clark ¶ 56; Weir Suppl. Decl. Costco

¶ 58; Weir Suppl. Decl. Procter & Gamble ¶ 54.

SPA-152

For Defendant Costco, whether the products were sold at Costco was also a variable.

Weir Suppl. Decl. Costco ¶ 58.

Weir explained in his reports and during the evidentiary hearing the variables and how he

decided upon them:

> I had gone through a process of examining the underlying sales data, understanding which products were large sellers in the marketplace, reviewing the labels, reviewing the deposition testimony of corporate executives that work with these products to get an understanding of the likely product attributes for inclusion in the model and then running a number of regressions to test the specification of the model to find the specification that, in tandem with economic theory, the facts of the case and the statistics . . . for evaluating regression, appeared to produce a reliable result.

Evid. Hr'g Tr. 23:21–24:6.  He explained that he took adequate steps to ensure he had all

appropriate variables:

> . . . [T]hat's done through a combination of analysis of the facts at hand, looking at the nature of the products, looking at the statistics of the regression. There's no rule that says these are the attributes that you need to look at. It's basically something where you need to apply some amount of judgment based on the facts and circumstances of your research objective and the nature of what it is that you're studying.

*Id.* 25:19–26:1; *see also* Weir Suppl. Decl. Kimberly-Clark ¶¶ 57–70; Weir Suppl. Decl. Costco

¶¶ 59–73; Weir Suppl. Decl. Procter & Gamble ¶¶ 55–68.

After completing steps one and two, *third*, Weir performed the hedonic regression

analysis with "Stata," a commercially available program that is widely used by economists; he

found a price premium attributable to the flushable claim.  Weir Suppl. Decl. Kimberly-Clark

¶¶ 71–72; Weir Suppl. Decl. Costco ¶¶ 74–75; Weir Suppl. Decl. Procter & Gamble ¶¶ 69–70.

In reliance on econometric literature, he converted the sales data into quarterly data and analyzed

product attributes and control variables as potential explanations of price.  Weir Suppl. Decl.

Kimberly-Clark ¶¶ 76–77; Weir Suppl. Decl. Costco ¶¶ 79–80; Weir Suppl. Decl. Procter &

Gamble ¶¶ 74–75.  After testing several different specifications, he concluded that the model is reliable in demonstrating whether there is a price premium associated with the flushable claim.  Weir Suppl. Decl. Kimberly-Clark ¶ 78; Weir Suppl. Decl. Costco ¶ 81; Weir Suppl. Decl. Procter & Gamble ¶ 76.

Weir's results indicate that there is a marketwide percentage price premium for a wipe with a flushable claim:  The hedonic regression model developed for the Kimberly-Clark class demonstrates that consumers paid 6.215% more for a wipe advertised as flushable than they would have for a wipe not labeled as flushable; the hedonic regression model developed for the Costco class demonstrates that consumers paid 8.5619% more for a wipe advertised as flushable; and the hedonic regression model developed for the Procter & Gamble class demonstrates that consumers paid 7.95% more for a wipe advertised as flushable.  Weir Suppl. Decl. Kimberly-Clark ¶ 79; Weir Suppl. Decl. Costco ¶ 82; Weir Suppl. Decl. Procter & Gamble ¶ 77.

Various metrics confirm the reliability of the results, according to Weir.  The R-squared and the adjusted R-squared are widely used indicators of the explanatory power of a regression model; they demonstrate the percent variation in a dependent variable that can be explained by independent variables.  Weir Suppl. Decl. Kimberly-Clark ¶ 42; Weir Suppl. Decl. Costco ¶ 43; Weir Suppl. Decl. Procter & Gamble ¶ 40.  For each defendant, relatively high adjusted R-squared values indicate that the hedonic regression model explains the variation in the dependent variable to a high degree.  Weir Suppl. Decl. Kimberly-Clark ¶ 81 ("the model is explaining 92.7% of the variation of the dependent variable"); Weir Suppl. Decl. Costco ¶ 84 ("the model is explaining 94.9% of the variation of the dependent variable"); Weir Suppl. Decl. Procter & Gamble ¶ 79 ("the model is explaining 92.8% of the variation of the dependent variable").

Weir also explained that the F-statistic, an indicator of explanatory power which helps determine whether the model makes statistical sense, confirms that the model has "strong explanatory power."  Weir Suppl. Decl. Kimberly-Clark ¶¶ 43, 81; Weir Suppl. Decl. Costco ¶¶ 44, 84; Weir Suppl. Decl. Procter & Gamble ¶¶ 41, 79.

A third metric, the T-statistic is used to evaluate whether a result is statistically significant.  Weir Suppl. Decl. Kimberly-Clark ¶ 44; Weir Suppl. Decl. Costco ¶ 45; Weir Suppl. Decl. Procter & Gamble ¶ 42.  It indicates that the result for each defendant is statistically significant at the 99% confidence level.  Weir Suppl. Decl. Kimberly-Clark ¶ 82; Weir Suppl. Decl. Costco ¶ 85; Weir Suppl. Decl. Procter & Gamble ¶ 80.

In sum, Weir concluded that there is a strong likelihood that each member of the three classes paid a percentage amount more for a wipe with a flushable claim than they would have if the wipe did not have a flushable claim.  Evid. Hr'g Tr. 759:8–10 ("[I]f we observe a marketwide price premium, then all consumers universally are impacted by that marketwide price premium.").  Weir explained that the marketwide premium is unaffected by discounts, promotions, or special offers, because "[b]y lowering the product's overall price, you will lower the cash amount that people have paid in premium but not the change in value for that product." *Id.* 759:21–23.

The apparent mismatch between the time periods of the certified classes and the models was addressed by Weir.  To the extent that the model does not include data from 2008 and 2009, years which are part of the Kimberly-Clark class period, Weir stated that "it would be . . . reasonable . . . to apply the premium for the longer period for which we have data to" 2008 and 2009, "based on what [he has] seen from [his] regression results."  *Id.* 141:20–24, 143:21–23. Weir also testified that using his model on various date ranges ending in 2017, when the class

periods currently end, also results in a calculable price premium. *See id.* 765:10–767:21, 773:20–775:18, 776:18–24.

Overall, Weir presented his analysis clearly and precisely during the hearings on remand. This court found him qualified, reasoned, deliberate, and credible. His regression calculations took into account the relevant objections of Defendants' experts, and he responded at length, and convincingly, to the criticisms of Defendants' experts, *see infra*, Sections II.C.2, II.C.3, II.C.4. *See generally* Evid. Hr'g Tr. 10:18–227:7, 233:6–235:11, 758:12–789:5. He explained the reasoning for various judgments he, as an expert, made and described how changing the model to account for "mistakes" or "problems" raised by Defendants did not change the accuracy of his model. *See id.* 758:12–768:3, 773:12–779:5.

Defendants moved to exclude Weir's report and testimony. *See* Kimberly-Clark Corp.'s Post-Hr'g Br. Supp. Oral Mot. Exclude Test. Colin Weir & Opp'n Class Cert. 14–40, No. 14-cv-1142, ECF No. 362; Def. Costco Wholesale Corp.'s Post-Hr'g Br. Supp. Decert. Class 25–31, No. 14-cv-1142, ECF No. 379 (filed under seal as Def. Costco Wholesale Corp.'s Post-Hr'g Br. Supp. Decert. Class, No. 14-cv-1142, ECF No. 358-1); Def. Procter & Gamble Co.'s Mem. L. Supp. Decert. Damages Class Pursuant Mandate Ct. Appeals 2d Cir. 2 n.2, No. 14-cv-4090, ECF No. 322. Those motions are discussed *infra*, in Section III.A, and are denied.

### 2. Dr. Keith R. Ugone

Kimberly-Clark's expert rebutting Weir is Dr. Keith R. Ugone, a Managing Principle at Analysis Group. Kimberly-Clark Ugone Suppl. Decl. ¶ 13. Dr. Ugone has a B.A. from the University of Notre Dame, an M.A. from the University of Southern California, and a Ph.D. from Arizona State University—all in economics. *Id.* ¶ 16. In his current position, he provides economic, financial, and damages-related consulting services to clients, and has done so in many litigations, including consumer actions. *Id.* ¶ 14. Although Dr. Ugone has performed economic

14

analyses of various types, he has never developed and performed a hedonic regression analysis from start to finish.  Evid. Hr'g Tr. 403:16–404:7.  He noted during the hearing that "it's very much an art in terms of putting [a hedonic regression analysis] together."  *Id.* 406:4–5.

During prior class certification proceedings, Dr. Ugone raised a number of criticisms about Weir's proposed hedonic regression analysis, *see Kurtz*, 321 F.R.D. at 525, which he largely repeated in his post-mandate report and during the post-mandate hearing.  Dr. Ugone's criticisms fall into three categories.

*First*, hedonic regression analysis is inappropriate in this case since evaluating the alleged economic injury requires individualized inquiry because consumers (1) vary in their reasons for purchasing flushable wipes, (2) have different knowledge, perception, and behavior as to the flushable claim, (3) have different post-purchase experiences, and (4) paid different prices for wipes.  Kimberly-Clark Ugone Suppl. Decl. ¶¶ 26–61.

*Second*, Weir's analysis is flawed because (1) the challenged products' consistency in price over time suggests the lack of a causal link between the alleged misrepresentations and any price premium; and (2) inappropriate product categories are compared, attributes affecting price are ignored, and Weir's dataset is incorrectly and inappropriately composed.  *Id.* ¶¶ 62–96.  Dr. Ugone attempted to support his objection by having his staff run Weir's model for alternate time periods and to control for other attributes, resulting in significant variation in result as to the price premium, including results showing price premiums that are allegedly not statistically significant.  *Id.* ¶¶ 76–96; Evid. Hr'g Tr. 420:5–18.

And, *third*, Weir's methodology would not result in a reliable measure of damages if a "full refund" was used to calculate damages.  Kimberly-Clark Ugone Suppl. Decl. ¶¶ 97–102.

In coming to these conclusions, Dr. Ugone reviewed depositions, documentary evidence, Weir's reports, and the data underlying Weir's reports. Evid. Hr'g Tr. 335:22–336:7; Kimberly-Clark Ugone Suppl. Decl. ¶ 18.

Dr. Ugone was qualified and systematic in his approach to his rebuttal exercise.

Plaintiff Kurtz moved to exclude Dr. Ugone's testimony. Pl.'s Omnibus Mem. L. Further Supp. Pl. Kurtz's Mot. Class Cert. & Opp'n Defs' Mots Deny Class Cert., & Supp. Pl.'s Mot. Strike Opinions Kimberly-Clark's Expert Witness 47–56, No. 14-cv-1142, ECF No. 360. That motion is discussed *infra*, in Section III.B, and it is denied.

### 3. Dr. Denise Martin

Costco's rebuttal expert is Dr. Denise Martin, a Managing Director at NERA Economic Consulting. Costco Martin Suppl. Decl. ¶ 4. She has been retained as an economic expert in more than 200 class actions. *Id.* ¶ 5. During her undergraduate economics studies at Wellesley College and her graduate economics studies at Harvard University, from which she obtained a Ph.D., Dr. Martin was trained in economic methods, including hedonic regression analysis. *Id.* ¶ 4. But, like Dr. Ugone, Dr. Martin has never developed and performed a hedonic regression analysis from start to finish. Evid. Hr'g Tr. 715:23–716:7.

Dr. Martin submitted expert reports criticizing Weir's proposed methodology during the prior class certification proceedings, *see Kurtz*, 321 F.R.D. at 524–25. Post-remand, she criticizes Weir on five principle grounds. *First*, assuming that using only Costco data for the hedonic regression analysis would be appropriate, doing so would be impossible because all of Costco's wipes with a flushable claim are for adults, resulting in collinearity and an inability to separate any effect of the flushable claim on price from an effect of the adult claim on price. Costco Martin Suppl. Decl. ¶¶ 7–18. *Second*, by relying on data for non-Costco products, Weir provides a premium that is not specific to Costco and, "at best" estimates an average relationship

16

across all retailers and brands.  *Id.* ¶¶ 19–21.  *Third*, Weir ignores evidence that (1) prices at

Costco are deliberately low and set by adding to costs a fixed amount, and (2) the price premium

for flushable wipes at Costco, as compared to non-flushable Costco brand wipes, could be

because of volume discounting.  *Id.* ¶¶ 22–24.  *Fourth*, because the market for wipes is not

perfectly competitive, the coefficient measuring the relationship between the flushable claim and

price Weir calculates is not equivalent to a price premium.  *Id.* ¶ 25a.  Dr. Martin noted,

however, that this criticism does not mean that "you can't run a hedonic regression analysis in a

market that's not perfectly competitive[,]" clarifying that she disagreed with Weir "interpret[ing]

the coefficient on the flushable attribute . . . as the difference in price."  Evid. Hr'g Tr. 651:19–

652:3.  *Fifth*, even assuming that hedonic regression could calculate a price premium, Weir's

definition of flushable is overbroad and wipes offer other benefits, which Weir omitted as

variables.  Costco Martin Suppl. Decl. ¶ 25b.  Dr. Martin also concludes that Weir incorrectly

defined the market of products and inappropriately chose product data for his analysis.  *Id.* at 3

n.10; *id.* at 8 n.20.

 The court found Dr. Martin qualified, forthcoming, and deliberate in her approach to

rebutting Weir.

### 4.  Dr. Carol A. Scott

 Procter & Gamble's rebuttal expert, Dr. Carol A. Scott, was part of prior proceedings.

*See Kurtz*, 321 F.R.D. at 524.  Dr. Scott obtained her B.S. in business and history education from

the University of Texas at Austin, and has an M.S. in management and a Ph.D. in marketing

from Northwestern University.  Procter & Gamble Scott Suppl. Decl. Ex. A, at 2.  She is a

Professor Emeritus of marketing at the Anderson Graduate School of Management, University of

California, Los Angeles.  Procter & Gamble Scott Suppl. Decl. ¶ 2.  She has taught a number of

marketing courses and her marketing research has been published widely.  *Id.* ¶ 3.  Dr. Scott has

provided expert analysis and testimony in litigation.  *Id.* ¶ 2.

Dr. Scott criticizes Weir's approach and methodology as follows:  *First*, the data

underlying Weir's analysis is insufficient because (1) price was not available for private label

products, (2) Weir used inaccurate product characteristics and package claims, particularly when

package claims changed, (3) he included in the market products that are not direct competitors to

flushable wipes, and (4) his decision as to what products to include was arbitrary.  *Id.* ¶¶ 15–36.

*Second*, the hedonic regression Weir performed cannot calculate the price premium for the

flushable claim because Weir made no effort to account for any correlation between "superior

cleaning capability" and flushability, and Weir's definition of flushable fails to account for the

potential value of individual benefits.  *Id.* ¶¶ 37–50.  *Third*, Weir made statistical mistakes in his

analysis; he used a time period longer than the proposed class period and incorrectly coded

brands of wipes, correction of which resulted in there being no statistically significant price

premium.  *Id.* ¶¶ 52–63.  Dr. Scott explained that Weir's analysis also runs counter to real world

evidence demonstrating that Procter & Gamble did not decrease the price of its Always feminine

hygiene wipe when the flushable label was removed.  Evid. Hr'g Tr. 509:5–513:2.

Dr. Scott was credible and deliberate, but not convincing, in her attack on Weir's results.

### III. Admissibility of Expert Testimony

Expert testimony is admissible when the witness is "qualified as an expert by knowledge,

skill, experience, training or education" and the proposed "testimony is based upon sufficient

facts or data" and "is the product of reliable principles and methods" "reliably applied to the

facts of the case."  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms*, 509 U.S. 579 (1993).

District courts act as gatekeepers with respect to expert evidence and have "broad discretion" to

determine whether such evidence should be admitted or excluded.  *Amorgianos v. Nat'l R.R.*

18

*Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  Important to this inquiry is that a district court "focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* at 266.

The testimony of Dr. Martin and Dr. Scott is admissible.  At issue are motions to exclude the testimony of Weir and Dr. Ugone.  As indicated on the record, both motions are rejected.  *See* Tr. 6:11–17, Oct. 8, 2019.  Though the experts disagree, they were highly qualified in fields relevant to inquiries made here.  That the court found Weir more reliable than Dr. Ugone is not a basis for striking the latter's opinion.

### A.  Colin B. Weir

Weir is qualified by education and experience to conduct hedonic regression analyses. *See supra*, Section II.C.1.  He worked for several years in the consumer retail field and has conducted many hedonic regression analyses.  Other courts have concluded that he is qualified to render such opinions.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 WL 3804661, at *24 (N.D. Cal. Aug. 13, 2019); *Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017); *Scotts EZ Seed*, 304 F.R.D. at 413–14.

Weir's analysis is based upon sufficient data.  Reliable methods were properly applied to that data.  Hedonic regression analyses are widely accepted as sound statistical models of proof in consumer actions of this nature.  *See, e.g.*, *Hadley*, 2019 WL 3804661, at *24; *Schmitt v. Younique LLC*, No. SACV171397JVSJDEX, 2019 WL 1431906, at *9–10 (C.D. Cal. Jan. 10, 2019); *Pettit*, 2017 WL 3310692, at *4; *Langan v. Johnson & Johnson Consumer Companies, Inc.*, No. 3:13-CV-1470 (JAM), 2017 WL 985640, at *5–8 (D. Conn. Mar. 13, 2017), *vacated and remanded on other grounds*, 897 F.3d 88 (2d Cir. 2018); *Kumar v. Salov N. Am. Corp.*,

19

No. 14-CV-2411-YGR, 2016 WL 3844334, at *10 n.10 (N.D. Cal. July 15, 2016); *Scotts EZ Seed*, 304 F.R.D. at 413–14.

Lack of perfect competition in the flushable toilet wipes market, assuming that is the case, does not mean that hedonic regression analysis is inadmissible as evidence of a price premium. The competitive status of the market can be properly considered in assigning weight to the statistical evidence. Defendants' resort to cases discussing fraud-on-the-market and claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, offer no support for rejecting a commonly accepted statistical method of proof.

*In re NJOY, Inc. Consumer Class Action Litigation*, a case from the United States District Court for the Central District of California which is not binding on this court, similarly offers no support for exclusion. *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-428-JFW (JEMX), 2016 WL 787415 (C.D. Cal. Feb. 2, 2016). There, the court declined to exclude a hedonic regression analysis but later concluded that lack of perfect competition in the market, in addition to other issues specific to the particular model, made the model an insufficient basis for class certification. *Id.* at *9.

Regressions should not be excluded on the ground that they fail to meet arbitrary thresholds of statistical significance. In the current case, there are high degrees of statistical significance and any dispute about economic conclusions goes to weight not admissibility. *See Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 362–63 (7th Cir. 2001) ("The question whether a study is responsible and therefore admissible under the *Daubert* standard is different from the weight to be accorded to the significance of a particular correlation found by the study. It is for the judge to say, on the basis of the evidence of a trained statistician, whether a particular significance level, in the context of a particular study in a particular case, is too low to make the

study worth the consideration of judge or jury."); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *15 (N.D. Cal. Apr. 4, 2014) ("The Court finds that the fact that these two variables are not statistically significant at the 1%, 5%, and 10% levels goes to the weight, not the admissibility of [the] model.").

Nor does Weir's use of IRI data render his testimony inadmissible as based on unreliable data. In *In re Amla Litigation*, the court decertified a class of consumers on the basis that use of IRI projections was unreliable without additional inquiry into the methodology by which those projections were made. *See In re Amla Litig.*, 16-cv-6693, ECF No. 332 (S.D.N.Y. Aug. 7, 2019). Here, Weir obtained transaction-level data directly from IRI and reviewed the company's methods of data collection to test reliability.

Weir carefully developed and executed his hedonic regression model and actually produced it. He identified his research objective, studied the products and the market, carefully collected and analyzed data, used a widely-accepted analytical model, and tested his results. During the evidentiary hearing, he described this process at length, including how and why he made judgments as to what product data to collect and use, attribute selection and definition, and extrapolation of results to time periods and products not included in the data.

Any objections to Weir's specific hedonic regression analyses go to weight rather than admissibility. The development of a hedonic regression is, as Dr. Ugone said, "an art." None of Defendants' experts developed a hedonic regression from scratch as Weir did; their second-guessing of his choices in attempting to demonstrate that the methodology is unreliable is unpersuasive. To the extent that Defendants contend that individual issues undermine the reliability of Weir's analysis, such as the inability to define "flushable," these arguments have already been considered and rejected by this court. *See generally Kurtz*, 321 F.R.D. 482.

Plaintiffs have demonstrated that Weir's opinions are based on sufficient, reliable facts and data and that their expert applied an accepted, deliberately designed methodology reliably to form his opinions.  Weir's opinions are admissible.

**B.  Dr. Keith Ugone**

The court rejects Plaintiff Kurtz's motion to exclude Dr. Ugone's testimony.  As already described, he is qualified by education and experience to offer his opinions.  *See supra*, Section II.C.2.  He offered a well-reasoned explanation of why he opined that hedonic regression analysis, and common economic proofs more generally, are insufficient in this case as a matter of economics, not as a matter of law.  Though the fact that he has not developed and performed a hedonic regression analysis is important in assigning weight to his testimony, it does not require exclusion of his opinions.  *See In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) ("It is worth noting in this respect that defendants' experts have a less demanding task, since they have no burden to produce models or methods of their own; they need only attack those of plaintiffs' experts.  Contradiction is to be expected and is often unresolvable without trial.").  Nor does his work with a team of individuals require exclusion, when he reviewed depositions, documents, Weir's report, and the data underlying Weir's report.  *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002) ("An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify.").

Dr. Ugone's opinions are admissible.

**IV. Predominance**

To certify a damages class under Federal Rule of Civil Procedure 23(b)(3), "a plaintiff . . . must establish [, *inter alia*,] predominance—that questions of law or fact common to class members predominate over any questions affecting only individual class members."  *Johnson v.*

22

*Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). "The . . . predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). At issue is whether questions common to the class "can be answered . . . as a whole through generalized proof and that those common issues are more substantial than individual ones." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (citation omitted). Predominance "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Sykes v. Mel S. Harris and Assocs LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013) (emphasis in original)). And plaintiffs need not be prepared at the certification stage "to demonstrate through common evidence the precise amount of damages incurred by each class member." *Sykes*, 780 F.3d at 82 (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)).

The Court of Appeals for the Second Circuit has asked this court to review the record and conclude whether Plaintiffs have demonstrated that they can prove "injury and causation . . . at trial with common evidence" so that they "have affirmatively demonstrated [their] compliance with Rule 23(b)(3)'s predominance requirement." *Kurtz*, 768 F. App'x at 41 (internal quotation marks and citation omitted). Before appeal, this court concluded that Plaintiffs had met this burden. The same conclusion is reached on remand.

Plaintiffs introduced evidence—the analysis and testimony of Weir—supporting the contention that there is a marketwide price premium attributable to the flushable label on toilet wipes, and that every New York consumer paid a percentage amount more for flushable toilet wipes as a result of this characterization. *See supra*, Sections II.C.1, III.A. The evidence sufficiently demonstrates that common evidence can prove causation and injury. Other courts

have certified classes of consumers with similar evidence.  *See, e.g.*, *Hadley*, 2019 WL 3804661, at \*24; *Schmitt*, 2019 WL 1431906, at \*9–10; *Pettit*, 2017 WL 3310692, at \*4; *Kumar*, 2016 WL 3844334, at \*10; *Scotts EZ Seed*, 304 F.R.D. at 413–14; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 571–72 (S.D.N.Y. 2014).

Defendants argue that Weir's hedonic regression analysis fails to comply with rules articulated in *Comcast Corporation v. Behrend*, in which the Supreme Court reversed certification of a Rule 23(b)(3) class because the regression model in question accounted for four theories of antitrust injury, rather than the one antitrust injury still at issue in the class litigation. 569 U.S. 27, 31–36 (2013).  Defendants contend that everything from Weir's product attribute choices to his data selection fail *Comcast*.  This is a misreading of that case.  "*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury . . . ." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (citing *Comcast*, 569 U.S. at 34–35).

Weir's model and testimony match Plaintiffs' *single* theory of the case that consumers paid more for flushable toilet wipes because of the flushable label on Defendants' products. Disagreement about Weir's judgments in developing and performing the model, as well as disagreement about whether Weir's judgment about extrapolation of the results of his model to certain time periods or products, are questions answerable by admitted evidence.  Weir made reasoned decisions about how to actually construct and run a model testing Plaintiffs' theory of liability.  The model fits the theory of Plaintiffs' case.  *See Scotts EZ Seed*, 304 F.R.D. at 414 ("In sum, plaintiffs' full compensatory damages and price premium damages models satisfy *Comcast* because they match plaintiffs' theories of liability.").

Defendants raise a number of arguments opposing predominance. They claim that predominance is defeated by the plethora of individualized issues. Individual issues do not predominate for the reasons already explained. *See Kurtz*, 321 F.R.D. at 547–52. Plaintiffs allege that they were injured at the time of purchase of Defendants' products when they paid a marketwide inflated price because of the flushable label. Individual understanding of the term "flushable," experiences of flushability after purchase, or even motivations for purchase do not affect the price paid at the cash register. *See Ebin*, 297 F.R.D. at 568–69 (explaining that whether or not a class member wanted to purchase a product with a misleading label, "they nevertheless paid too much for it"). Of no consequence are arguments that Plaintiffs have not demonstrated that any single consumer was injured. Plaintiffs have submitted proof that every consumer paid a percentage amount more for wipes labeled flushable, regardless of what price was actually paid or the subsequent use of the wipes, because of a marketwide price premium caused by the flushable label.

No field work demonstrates, at this point in the litigation, what percentage of consumers who buy Defendants' wipes use them for something other than toileting purposes or use the wipes for toileting purposes but do not flush them. Such evidence might be useful, but the lack of it, at this stage of the litigation before discovery is completed, does not weigh against concluding that Plaintiffs have met their burden on predominance for certification purposes.

A related criticism is that Weir generated an average relationship between price and the flushable label across the market, unrelated to any particular defendant's product or conduct. This ignores Plaintiffs' contention that there is a *marketwide inflation of price by a particular calculable percentage*. For *every* flushable wipe product purchased, the consumer paid more

because of the flushable misrepresentation.  There is no need for individualized inquiry as to causation or injury.

To the extent that Defendants have raised concerns about Weir's model and its ability to calculate damages, notably their arguments that there are individualized issues of when or where a consumer made her purchase, these arguments are rejected.  "Plaintiffs need not prove exactly what their damages will be."  *Kurtz*, 321 F.R.D. at 450; *see also Roach*, 778 F.3d at 407 ("*Comcast* . . . did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance.").

In the instant case, if liability is found, precise statutory damages may be requested on a classwide basis.  N.Y. Gen. Bus. Law § 349(h) (providing for statutory damages of $50 to each class member for each time defendant violated the statute by a sale).  "The single question of whether plaintiffs paid more than they would have for the good because of the deceptive practices of the defendants-sellers in labeling their products as 'flushable' predominates over any individualized damages inquiries."  *Kurtz*, 321 F.R.D. at 550–51.

Finally, Defendants contend that market evidence, such as Defendants' pricing policies and the stability of flushable toilet wipe prices over the time in which alleged misrepresentations have been covered by the media, contradict Plaintiffs' evidence of a marketwide price premium. This argument does not negate the force of the regression as the court considers predominance.

Plaintiffs have met their burden and produced common proof of causation and injury. Individualized issues do not predominate.  In Weir's expert declarations supporting class certification submitted pre-remand, he raised two other alternative methods for determining a price premium:

> It would also be possible to evaluate the difference in price attributable to the "flushable" label ... using statistical survey techniques such as contingent valuation (a representative survey technique that asks people to directly report their willingness to pay to obtain a specific good or product attribute, or willingness to accept to give up a good or product attribute) or conjoint analysis (a representative survey technique where survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof) the results of which permits an economist to analyze the value of various product attributes.

*Kurtz*, 321 F.R.D. at 524.  Neither type of analysis has been covered during the remand period. They are not needed since the regression used was sufficient to show unity of class.  The district court's current certification orders are maintained.

### V. Conclusion

Plaintiffs' claims—also raised by consumers in other states and by municipalities— would best be resolved on a national basis.  Coordinated resolution by the appropriate federal administrative authorities may need to be considered.  *See Kurtz*, 321 F.R.D. at 495–96; *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 79 (E.D.N.Y. 2015) ("Whether wipes should be labeled 'flushable' is a national issue that requires a single national resolution.").  In the absence of such appropriate action, a global settlement through which manufacturers and retailers such as Defendants are subject to a single set of rules governing flushability and packaging might be preferable and a basis for a simple national settlement.

After remand, Defendant Procter & Gamble advised this court of its resolution of consumer litigation concerning claims similar to Plaintiffs' covering wipes labeled as flushable purchased in all United States jurisdictions outside of New York State.  *See* Letter from C. Lannin, No. 14-cv-4090, ECF No. 277; Order Granting Final Approval Class Action Settlement

& J., No. 15-cv-2150 (N.D. Cal. Mar. 28, 2019), ECF No. 135.  New York consumers were not included in the settlement.

The economic strength of the United States can be attributed, in part, to its single common market with uniform products sold throughout the country.  *Cf. Granholm v. Heald*, 544 U.S. 460, 472 (2005) ("States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses.  This mandate 'reflect[s] a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.'" (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 325–26 (1979)); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 803 (1976) ("[T]his Nation is a common market in which state lines cannot be made barriers to the free flow of both raw materials and finished goods in response to the economic laws of supply and demand.").

The desirability of a single common market with uniform products is enhanced by the New York State damages provision applicable in this class action.  Plaintiffs seek $50 for each purchase during the class period, pursuant to New York General Business Law Section 349, which permits a plaintiff "to recover his actual damages *or fifty dollars, whichever is greater*." N.Y. Gen. Bus. Law § 349(h) (emphasis added); *see Kurtz*, 321 F.R.D. at 500–02.

A recovery of this nature in a class action—potentially a total of many tens of millions of dollars— is permitted in federal court by Supreme Court precedent, but would arguably be prohibited were the class action brought in a New York State court.  *Compare* N.Y. CPLR § 901(b) ("Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or

SPA-170

minimum measure of recovery created or imposed by statute may not be maintained as a class action."), *with Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–416 (2010) (concluding that N.Y. CPLR Section 901(b) did not preclude federal class actions seeking statutory damages under New York State law); *see also Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1014–16 (N.Y. 2007) (evaluating the application of CPLR Section 901(b) and whether treble antitrust damages are a "penalty" not recoverable in a class action, while explaining that "the determination of whether a certain provision constitutes a penalty may vary depending on the context.").

Complex *Erie* problems raising and intermingling substantive and procedural issues will need thorough consideration as this class action proceeds. *Compare Shady Grove*, 559 U.S. at 398–416, *with id.* at 436–59 (Ginsburg, J., dissenting); *see also Kurtz*, 321 F.R.D. at 501–02 (citing New York academics and caselaw in support of the contention that the dissenting opinion in *Shady Grove* would be operative in the present case); *Belfiore*, 311 F.R.D. at 54–59 (discussing New York State law's limits on predetermined damages and the Supreme Court's opinion in *Shady Grove*).

It should be noted that New York State policy supports denying Plaintiffs the right to seek the statutory penalty of $50 per purchase here. *See Kurtz*, 321 F.R.D. at 501–02; *Belfiore*, 311 F.R.D. at 54–59. CPLR Section 901(b) represents a policy decision of the New York State legislature. Historically, New York's use of "§," rather than "Rule," "section" being used for CPLR Section 901(b), denoted that only the New York State legislature had power to approve changes in the provision—as compared with federal civil rules developed essentially under Supreme Court control. *See* Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 102.01 (David L. Ferstendig ed., 2019) ("Originally, the Judicial Conference [of New York]

was authorized to adopt, amend or rescind rules of civil practice in the CPLR, subject to legislative approval. This power was limited to the rules of the CPLR and did not extend to the sections of the CPLR. The State Legislature also had the power to amend, repeal or add to the rules or sections by legislative act.").  The distinction between sections and rules was eliminated in 1978 without any change in the policy underlying governance of CPLR Section 901(b).  *Id.*

The damages issue, in light of the settlement of all but claims by New Yorkers, presents serious substantive legal questions controlling the litigation.

Should the parties begin settlement discussions again, they should consider doing so in a manner that would harmonize any relief granted by this court with that afforded by the geographically expansive Procter & Gamble settlement so that national uniform products can be produced by each defendant.

The parties' motions to exclude the testimony of Weir and Dr. Ugone are rejected.  The decision certifying a Rule 23(b)(3) class is reasserted.  Common issues predominate over individual issues.

<div style="text-align:center; margin-left:auto;">

SO ORDERED.

  s/ Jack B. Weinstein  
Jack B. Weinstein  
Senior United States District Judge

</div>

Dated:  October 25, 2019  
      Brooklyn, New York