# 17-1856-cv(L), 17-1858-cv(CON)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

D. JOSEPH KURTZ,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

COSTCO WHOLESALE CORPORATION, KIMBERLY-CLARK CORPORATION,

*Defendants-Appellants.*

Appeal from the United States District Court for the Eastern District of New York, case no. 1:14-cv-01142-JBW-RML, Hon. Jack B. Weinstein

### SUPPLEMENTAL REPLY POST-REMAND BRIEF

ADAM J. HUNT
LENA H. HUGHES
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 887-8784
BMatsui@mofo.com

APRIL 24, 2020

*Counsel for Defendant-Appellant Costco Wholesale Corporation*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellant Costco Wholesale Corporation ("Costco") is a publicly-held corporation. Costco has no parent corporation and no publicly-held corporation owns 10% or more of Costco's stock.


Dated: April 24, 2020                                    s/ Brian R. Matsui
                                   _____

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ............................................................................... 1

ARGUMENT .................................................................................... 2

I.    KURTZ'S EXPERT EVIDENCE IS INADMISSIBLE ................................. 2

II.   THE DISTRICT COURT IMPROPERLY PUNTED THE PARTIES' RULE 23 DISPUTES TO THE JURY ............................................. 3

III.  KURTZ FAILED TO PROVE THAT COMMON ISSUES WILL PREDOMINATE .......................................................................... 6

     A.    Individual Issues of Injury Will Predominate ....................................... 6

         1.    At best, Weir's model calculates an average result ................... 6

         2.    Weir's model does not isolate injury attributable to Costco's alleged wrongdoing .................................................... 10

         3.    The essential predicates of hedonic regression are not met .......................................................................... 15

     B.    Individual Issues Of Causation Will Predominate ............................. 18

CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Bazemore v. Friday*,
    478 U.S. 385 (1986)..................................................................2

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ...................................................4

*Broussard v. Meineke Disc. Muffler Shops*,
    155 F.3d 331 (4th Cir. 1998) ...................................................6

*In re ConAgra Foods*,
    302 F.R.D. 537 (C.D. Cal. 2014)..........................................15

*In re ConAgra Foods*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..............................13, 14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................3, 4, 5

*Fagan v. Neutrogena Corp.*,
    2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) ....................13

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ..................................................13

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ............................................3

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ....................................................6

*Glatt v. Fox Searchlight Pictures*,
    811 F.3d 528 (2d Cir. 2016) ....................................................6

*Harnish v. Widener Univ. Sch. of Law*,
    833 F.3d 298 (3d Cir. 2016) ....................................................8

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ...............................................3, 4, 5

*In re Korean Ramen Antitrust Litigation*,
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017)......................................................16

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ................................................................................7

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008)....................................................................................4

*In re NJOY*,
  2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ......................................................15

*Opperman v. Kong Techs.*,
  2017 WL 3149295 (N.D. Cal. July 25, 2017) ..................................................13

*In re Processed Egg Prod. Antitrust Litig.*,
  2016 WL 410279 (E.D. Pa. Feb. 3, 2016) ........................................................11

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013)..............................................................................8

*Reed v. Advocate Health Care*,
  268 F.R.D. 573 (N.D. Ill. 2009)...........................................................................2

*Schechner v. Whirlpool Corp.*,
  2019 WL 4891192 (E.D. Mich. Aug. 13, 2019)................................................10

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*,
  806 F.3d 71 (2d Cir. 2015) ................................................................................19

*Singleton v. Fifth Generation*,
  2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017)..................................................11

*In re State Farm Fire and Casualty Company*,
  872 F.3d 567 (8th Cir. 2017) ...............................................................................5

*Stutman v. Chemical Bank*,
  95 N.Y.2d 24 (2000).....................................................................................19, 20

*Sykes v. Mel S. Harris & Assocs.*,
  780 F.3d 70 (2d Cir. 2015) ...................................................................................6

*Tyson Foods v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ...................................................................8

*Waggoner v. Barclays PLC,*
    875 F.3d 79 (2d Cir. 2017) .......................................................11, 12

*Wal-Mart Stores v. Dukes,*
    564 U.S. 338 (2011) .......................................................................5

*Weiner v. Snapple Beverage,*
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ....................................8

*Werdebaugh v. Blue Diamond Growers,*
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ......................11, 13, 15

**Statutes & Rules**

N.Y. GBL § 349 ......................................................................................8

N.Y. GBL § 350 ......................................................................................8

Fed. R. Civ. P. 23 ..........................................................................1, 3, 4

Fed. R. Civ. P. 23(b)(3) .................................................................1, 3, 6

**Other Authorities**

American Bar Association, ECONOMETRICS: LEGAL, PRACTICAL AND
    TECHNICAL ISSUES (2d ed. 2014) .................................................17

Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC
    EVIDENCE (3d ed. 2011) ...............................................................16

## INTRODUCTION

In its remand order, this Court noted its "specific concern with [Kurtz's] proof that [he] can establish the injury and causation elements of [his] claims at trial with common evidence," and it instructed that Kurtz must "affirmatively demonstrate[]" his compliance with Rule 23(b)(3)'s predominance requirement. Summary Order 4, Dkt. 197-1. Despite that admonition, the district court declined to resolve the parties' key dispute on remand—whether Kurtz's expert's model can deduce a price premium injury in this market attributable to Costco's alleged misrepresentation of its flushable wipes. Kurtz does not dispute this. He instead incongruously calls these disagreements "quibbling" and "nit-picky arguments" that the "trier-of-fact resolves on the merits." Kurtz 1. But when it comes to Rule 23, the district court *is* the trier of fact. That is what both this Court and the Supreme Court require. And the fact that Rule 23 determinations sometimes overlap with the merits of a plaintiff's claims provides no license for the district court to shrug off its responsibility.

Had the court done what was required, it could have reached only one conclusion: that Kurtz failed to meet his burden of proof. The record clearly demonstrates that Kurtz's sole proposed method of proving injury and causation on a classwide basis cannot do either. As a result, individual issues of injury and causation will overwhelm any common ones. This Court should accordingly

reverse the district court's class certification order or, at a minimum, vacate it and remand for resolution of the remaining disputes over class certification.

## ARGUMENT

## I.    KURTZ'S EXPERT EVIDENCE IS INADMISSIBLE

Despite the many failings of his supplemental expert evidence (Costco 17-18; Kimberly-Clark 15-33), Kurtz insists that the court properly admitted Weir's analysis simply because "hedonic regression analysis is a well-established statistical tool." Kurtz 14. The "critical issue," however, is not whether hedonic regression is "generally accepted" in the abstract; it is whether Weir's *actual* "regression analysis" is "appropriate when applied to the facts and data in this case." *Reed v. Advocate Health Care*, 268 F.R.D. 573, 594 (N.D. Ill. 2009). It is not. Hedonic regression is not an accepted methodology when its essential preconditions are missing. Costco 17-19. And Kurtz makes no effort to show that those preconditions are present here.

Weir's failure to account for key product attributes that consumers value more than flushability also made his analysis fundamentally unreliable. Costco 17-18. While Kurtz argues (at 18) that a regression need not include "all measurable variables," it unquestionably must "account[] for the major factors" that affect that analysis. *Bazemore v. Friday*, 478 U.S. 385, 400 (1986). The evidence here showed that consumers value a number of product attributes that Weir did not

control for *more* than flushability. CA196-197; A3106-3107; A3181. Kurtz (at 18-19) faults defendants for not themselves proving the impact of these variables on price. But Kurtz has it backwards—it is the "proponent [of expert testimony] who must establish that the major factors have been accounted for in a regression analysis." *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 145 (S.D.N.Y. 2006). For these reasons and those set forth in Kimberly-Clark's briefs, which Costco incorporates by reference, Kurtz's expert evidence should have been disregarded. Without that evidence, Kurtz cannot satisfy the requirements of Rule 23(b)(3) and the certification order should be reversed.

## II. THE DISTRICT COURT IMPROPERLY PUNTED THE PARTIES' RULE 23 DISPUTES TO THE JURY

Even assuming Weir's expert evidence is admissible, Costco demonstrated that the district court conflated its roles under *Daubert* and Rule 23 and wrongly refused to resolve expert disputes relevant to predominance. Costco 20-21.

In response, Kurtz contends the district court declined to resolve defendants' experts' disagreements with Weir's methodology because they merely "impact[ed] the weight of Weir's expert opinions." Kurtz 1. Yet that proves Costco's point. While *Daubert* does not compel a court to weigh competing expert evidence, Rule 23 *does*. *E.g.*, *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 38 (2d Cir. 2006); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Under Rule 23, the court must "judg[e] the persuasiveness of the evidence presented" and

"resolve" pertinent expert "disputes." *Ellis*, 657 F.3d at 982-83. So in *Ellis*, the Ninth Circuit held that the district court committed legal error when it declined to resolve an expert dispute relevant to Rule 23 on the ground that such "arguments attack the weight of the evidence and not its admissibility." *Id*. at 982. The district court committed that error here by holding that "*[a]ny* objections to Weir's specific hedonic regression analyses go to weight rather than admissibility." SPA162 (emphasis added); SPA164 (relying on admissibility decision to conclude that Kurtz "sufficiently demonstrates that common evidence can prove causation and injury").

Kurtz's argument (at 33) that the existence of the preconditions for hedonic regression is merely "fodder upon which qualified experts may disagree" similarly confuses admissibility with predominance. "[I]n ruling on class certification," as opposed to a *Daubert* motion, "a court may be required" to resolve "expert disputes concerning the import of evidence" and "the factual setting" of the case. *IPO*, 471 F.3d at 38 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005)). This obligation to resolve expert disputes is a basic feature of the rigorous analysis required by Rule 23. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 25 (1st Cir. 2008) (rejecting notion that "requirement that district courts probe into the viability of the premises of plaintiffs' theory of injury" is limited "to cases employing only legal presumptions of injury").

Kurtz also insists that the district court properly disregarded the parties' disputes because they are "attack[s] on the merits of Kurtz's case." Kurtz 26. That, too, is no answer. "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011). And "the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *IPO*, 471 F.3d at 41.

Courts therefore consistently resolve merits disputes relevant to certification. For instance, in *In re State Farm Fire and Casualty Company*, the Eight Circuit decided the merits question of whether the defendant's method of calculating insurance claims constituted a per se breach of contract at class certification. 872 F.3d 567, 573, 577 (2017). Similarly in *Ellis*, the Ninth Circuit held that the court was required to "examin[e] the merits" of expert evidence when certifying a class. 657 F.3d at 982.

So too here: Costco's expert evidence showed that Weir's hedonic regression fails to isolate a price premium attributable to Costco's alleged misrepresentation of its wipes' flushability. Costco 9-13. This is an individualized issue. Kurtz—who bears the burden of proof—has offered no other way to prove injury on a classwide basis. If Costco is right, the viability of the injury element of

each class member's claim turns on his or her ability to establish injury on an individual basis. The district court thus had to resolve the experts' disputes over the ability of hedonic regressions to serve as classwide evidence or injury or causation. At a minimum, this requires that the certification order be vacated.

## III. KURTZ FAILED TO PROVE THAT COMMON ISSUES WILL PREDOMINATE

Had the district court done more than just a *Daubert* analysis, it could only have concluded that individual issues will predominate over common ones. Although Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof," *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 81 (2d Cir. 2015), the common issues must be "more substantial than the issues subject only to individualized proof," *Glatt v. Fox Searchlight Pictures*, 811 F.3d 528, 538 (2d Cir. 2016).

### A. Individual Issues of Injury Will Predominate

#### 1. *At best, Weir's model calculates an average result*

Kurtz does not dispute that "average" calculations rarely demonstrate commonality or predominance. For good reason: evidence based on averages "is not 'common' because it is not shared by all (possibly even most) individuals in the class." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 266 (3d Cir. 2011); *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 343 (4th Cir. 1998) (plaintiff failed to show that "lost profits" issue could be resolved on a "classwide"

6

basis where plaintiff's expert had "not attempted to calculate the damages that any individual franchisee ha[d] suffered in this case" but instead relied on "averages").

Kurtz's sole evidence for injury suffers from the same flaw. Weir's model calculates, at best, an average result across all retailers, brands, and products in his dataset. Costco 30-34. Contrary to Kurtz's argument (at 27) that "every class member was 'injured at the time of purchase of Defendants' products when they paid a marketwide inflated price because of the flushable label," Weir himself conceded that his calculation does not reflect "what any one individual paid" but instead only sought to measure what the "class paid in the aggregate." A2968.[1] That concession is fatal. It means that Weir's regression produces at most an "average" premium across his dataset. In an inefficient consumer market like the flushable wipes market, such an "average" says nothing about whether any individual class member paid a price premium or not. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008). A higher-than-average premium paid by some consumers would obfuscate the fact that many (or almost all) consumers paid none. After all, an average price premium could exist when some products in the dataset carry large premiums for flushability while others, such as Costco's

---

[1] When confronted with evidence that some of his regressions generated no premium when run on other timeframes, Weir's responded that he "may wind up with a different model than [he] used" if he sought to measure the class periods. A2930.

flushable wipes, carry *no premium* at all. A3587-3588. Kurtz's evidence thus fails to "show that [he] can prove, through common evidence, that all class members were in fact injured." *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013).[2]

Kurtz responds by attacking a straw man—arguing that he is not required to show "what injury each individual consumer suffered by a specific dollar amount." Kurtz 31. Costco has never suggested he must. Kurtz conflates "two distinct concepts: the 'fact of damage'" or "injury" and "the measure/amount of damages." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305-06 (3d Cir. 2016). "'While obstacles to calculating damages may not preclude class certification, the putative class must first demonstrate economic loss'—that is, the fact of damage— 'on a common basis.'" *Id.* Here, Costco's objection is not that Kurtz has failed to calculate the amount of each class members' damages; it is that he failed to show that common evidence can establish that each class member was *injured at all*. Costco 30-34.

---

[2] Kurtz's evidence that unspecified purchasers of flushable wipes paid a premium for those wipes plainly could not satisfy an individual plaintiff's burden under N.Y. GBL §§ 349-350 to prove that he "in fact paid more for [the defendant's product] as a result of" the defendant's deceptive conduct. *Weiner v. Snapple Beverage*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010). Such evidence does not become sufficient simply because it is relied on by a class. *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016).

Trying to escape Weir's concession, Kurtz argues (at 29) that Costco is playing "semantical games" or "twisting Weir's words." Not so. This is "Econometrics 101." A3588. As Costco explained (at 32), Weir's Costco dataset contained numerous brands, retailers, labels, and products, so it calculated (at best) an average effect on price across all such brands, retailers, labels, and products. A3587-3588; A3637; A3646. In his answering brief, Kurtz offers no response.

Kurtz also fails to dispute that real-world evidence contradicts his price premium theory. Costco 32-33. His argument (at 40) that Weir's model "generates a price premium regardless of the impact of any external market forces" confirms that Weir did not attempt to determine whether purchasers actually suffered real-world harm. Costco applies the same pricing policy to its flushable wipes that it applies to all of its products: it builds in no premium for specific product attributes; it merely adds a small capped margin to its acquiring costs. A3610-3611; CA1359-1363; CA191-194.

Kurtz's sole response is that "[a] product may still carry a price premium for a product attribute despite having a lower total retail price than other products in the marketplace." Kurtz 5, 40. But that speculative claim fails to explain why the premium Weir allegedly calculates for flushability on Costco's flushable wipes is disproportionately larger than the supposed flushability premium charged by other retailers and brands. Costco 33. The obvious explanation is that Weir has

calculated an *average* result across the entire market, not a Costco-specific result. *Id.* That is, he combined products with no or negative premiums for flushability with products that carry high flushability premiums (such as small travel-sized packages that Costco does not sell) and reported an average premium across all those products that bears no relationship to Costco's actual pricing. Costco 37; A3593.

### 2. *Weir's model does not isolate injury attributable to Costco's alleged wrongdoing*

Kurtz insists that his model "track[s] his theory of liability" as required by *Comcast*. Kurtz 28. That is wrong for two independent reasons.

*First*, because Weir's model does not control for variables correlated with flushability—like cleaning ability, thickness, and moistness—it necessarily mistakes any premium for those unchallenged characteristics as a premium for flushability. Costco 34-38. Since Kurtz does not challenge those attributes of Costco's wipes, his injury model does not "match" his theory of Costco's liability. *Id.*

Contrary to Kurtz's argument (at 28), this is very much a *Comcast* error. "To satisfy *Comcast*, hedonic regression must take into account certain relevant or confounding factors." *Schechner v. Whirlpool Corp.*, 2019 WL 4891192, at *8 (E.D. Mich. Aug. 13, 2019), Rule 23(f) petition denied, No. 19-111 (6th Cir. Nov. 5, 2019). That is because a regression's failure to control for attributes correlated

with the attribute of interest "renders the model incapable of providing a damages figure that is consistent with [p]laintiff's liability case." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *13 (N.D. Cal. Dec. 15, 2014).

For this reason, courts have repeatedly held that hedonic regression analysis flunks *Comcast* when it fails to control for major variables that may affect price. Thus, a regression model purporting to calculate a premium attributable to "evaporated cane juice" and "All Natural" labels failed *Comcast* where it did not control "for the effect of advertising on price." *Id.* Similarly, a proposed regression model seeking to calculate the value of a vodka label failed to satisfy *Comcast* where it would not control for product quality. *Singleton v. Fifth Generation*, 2017 WL 5001444, at *22 (N.D.N.Y. Sept. 27, 2017). And a model measuring the impact of defendants' anticompetitive conduct was deemed inadequate where it left "out a variable to account for state regulatory action." *In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 410279, at *8 (E.D. Pa. Feb. 3, 2016).

Far from supporting Kurtz's position, this Court's decision in *Waggoner v. Barclays PLC*, 875 F.3d 79 (2017), highlights the inadequacy of his evidence. *Contra* Kurtz 28-29. In *Waggoner*, the defendants argued that the plaintiffs' classwide damages model failed to comply with *Comcast* because it did not "disaggregate damages that resulted from" Barclay's misrepresentations about the

company's integrity from damages that resulted from "the New York Attorney General's regulatory action" against the company and "the potential fines associated with it." 875 F.3d at 105-06.[3] This Court held that the *Comcast* standard was "met notwithstanding that some" of the damages captured by the plaintiffs' damages model "may have been the result of the New York Attorney General's action and potential fines" because "the regulatory actions and any ensuing fines were a *part of the alleged harm the Plaintiffs suffered*." *Id.* at 106 (emphasis added). Here, any premium attributable to the cleaning ability, moistness, or thickness of Costco's wipes is *not* part of the harm the Costco class allegedly suffered.

Switching tacks, Kurtz argues that Weir did control for non-flushable attributes through the brand variable. Kurtz 18. Kurtz says that Weir properly lumps those attributes into an amorphous brand variable because they are hard to quantify. Kurtz 19 n.1. But that proves Costco's point: if the major attributes of flushable wipes are too hard for hedonic regression to quantify, there is no reason to believe they could be quantified when aggregated in a "brand" variable. Weir's inability to account for these attributes is a reason for class certification to be denied, not granted. Regardless, defendants' experts explained why the "brand"

---

[3] In *Waggoner*, unlike here, there was no question that plaintiffs could establish *injury* (as opposed to damages) on a classwide basis.

variable cannot control for product attributes that consumers value differently than brand. Costco 36. And Weir never explained how it could. *Werdebaugh*, 2014 WL 7148923, *12.

*Second*, even if Weir's model had controlled for non-flushable attributes, it still does not isolate harm attributable to Costco's alleged wrongdoing because it does not even attempt to "distinguish[] between the value of" the multiple possible "interpretations" of the flushable claim. *Fagan v. Neutrogena Corp.*, 2017 WL 11418358, at *3 (C.D. Cal. Oct. 24, 2017); Costco 27-28. "[T]he precise formulation and context of [defendants'] representations are pivotal" to GBL claims. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). When, as here, there are multiple acknowledged interpretations of a label that has not even remained constant during the class period, a model must calculate the premium attributable to "the specific misunderstanding that is Plaintiffs' theory of liability in this case" to satisfy *Comcast*. *Fagan*, 2017 WL 11418358, at *3; *In re ConAgra Foods*, 90 F. Supp. 3d 919, 1023 (C.D. Cal. 2015); *Opperman v. Kong Techs.*, 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017).

That is so even when the reasonable consumer standard applies to the material misrepresentation element of plaintiff's claim. Under that standard, a plaintiff can prove a material misrepresentation if "a reasonable consumer would understand it in [the] way" plaintiff claims "and find it material," even if not

"*every* … consumer" would. *In re ConAgra Foods*, 90 F. Supp. 3d at 1019. But when it comes to injury, the diversity of potential meanings still matters, because the plaintiff class must be able to isolate the injury attributable to the particular consumer misunderstanding the defendant allegedly caused. *Id.* at 1020-23 (holding that plaintiffs could prove that "100% Natural" constituted a material misrepresentation on a classwide basis under reasonable consumer standard, but denying class certification because hedonic regression did not isolate premium attributable to the particular consumer understanding of that label alleged to be false).

Weir's model does even not purport to do that. It only seeks to calculate a premium caused by the presence of "flushable" on the label, without considering the different understandings consumers have for that word given its surrounding representations and context. CA2125-2126; A3577. But Kurtz's current theory of Costco's wrongdoing is limited to the claim that the flushable label falsely conveyed to consumers that the wipes "disperse or break apart within a reasonable time." Kurtz 2. He no longer contends that the representation was false with respect to other possible meanings he has acknowledged that consumers may ascribe to the flushable claim—such as his own belief that wipes are flushable so long as they cause no problem to his own plumbing system. A239. Thus, even on

its own terms Weir's model does not attempt to isolate injury attributable to Kurtz's theory of Costco's liability.

### 3. *The essential predicates of hedonic regression are not met*

The district court should not have certified the class for another reason—courts consistently decline to certify classes based on hedonic regression when, as here, its prerequisites are absent. Costco 25-29. That is so when the studied market lacks the required competitiveness. *In re NJOY*, 2016 WL 787415, at *8 (C.D. Cal. Feb. 2, 2016) ("Bayesian hedonic regression … [did] not satisfy *Comcast*" because it "requires a stable market where the price of a product is set by a competitive equilibrium," and plaintiff's expert's acknowledged that the market was "unstable, or at the very least immature.").[4] When the attribute of interest is inadequately defined. *In re ConAgra Foods*, 302 F.R.D. 537, 578-79 (C.D. Cal. 2014) (hedonic regression model could not distinguish "multiple possible characteristics that consumers associate with a 'natural' label"). And when the attribute of interest is perfectly collinear with another attribute—that is, when there is an exact linear relationship between two variables such that variations in one variable can be completely explained by movement in the other. *Werdebaugh*,

---

[4] Contrary to Kurtz's contention (at 14), Dr. Martin identified the commodities, milk, and egg markets as ones that have satisfied hedonic regression's competition requirement. A3657.

2014 WL 7148923 at *11 ("[T]he perfect collinearity problem here renders the damages model insufficient under *Comcast* because [the] model is incapable of isolating the damages attributable to Defendant's alleged wrongdoing.").

Kurtz argues that perfect collinearity does not defeat class certification based on hedonic regression. Kurtz 34. Yet that argument is contradicted by the authority he cites. In *Korean Ramen*, the plaintiffs *conceded* that "perfect collinearity" would create a "problem" for hedonic regression and thus class certification. *In re Korean Ramen Antitrust Litigation*, 2017 WL 235052, *13 (N.D. Cal. Jan. 19, 2017). They argued that because no such perfect collinearity existed, the presence of multicollinearity—where a variable is highly, but not perfectly correlated with another variable—should not defeat class certification. *Id.*

The *Korean Ramen* plaintiffs' concession is consistent with reference literature. Costco 6-7. Thus, the Federal Judicial Center's reference manual on scientific evidence urges that "[i]t is essential in multiple regression analysis that the explanatory variable of interest not be correlated perfectly with one or more of the other explanatory variables" because "[i]f there were perfect correlation between two variables, the expert could not separate out the effect of the variable of interest on the dependent variable from the effect of the other variable." A2612 (Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 324 (3d

ed. 2011)); American Bar Association, ECONOMETRICS: LEGAL, PRACTICAL AND TECHNICAL ISSUES, Appendix & Glossary (2d ed. 2014) (same).

Contrary to Kurtz's argument, Dr. Martin did not "manufacture[] the collinearity issue" here. Kurtz 34. She ran Weir's regression on Costco's sales data because that is how one could calculate a Costco-specific result. A3646-3647; CA1351-1357. Running the regression on Weir's merged dataset could not calculate a Costco-specific coefficient. A3646-3647; CA1351-1357; *supra* pp. 6-10. Dr. Martin's analysis revealed that a Costco-specific premium could not be calculated using any dataset because all flushable wipes sold at Costco are not baby wipes. Costco 10-11.

As for hedonic regression's requirement that the attribute of interest be adequately defined, Kurtz insists that "flushability" is because it is "a 'sufficiently distinctive' term' on the product labels." Kurtz 35. But Weir cannot use the distinctiveness of the flushable product label as a proxy for Kurtz's more limited theory of what flushability means. A3577-3578; CA1367-1368. As explained above, doing so erroneously overstates any premium attributable to Costco's alleged wrongdoing. *Supra* pp. 13-14. That is, it combines any purported value of the flushable label's alleged misrepresentation that the wipes will "disperse or break apart within a reasonable period of time"—Kurtz's current theory of

Costco's liability—with the value of other possible understandings of the claim. Kurtz 2.

## B. Individual Issues Of Causation Will Predominate

Kurtz also failed to prove that common issues of causation will predominate. Weir's hedonic regression model does not show Costco's alleged misrepresentation caused the price of Costco's wipes to be higher. And even if it did, it says nothing at all about loss causation—that is, whether the class members each suffered economic loss as a result. Costco 38-40. Far from being "beyond the scope" of this Court's remand (Kurtz 36), these causation issues were among this Court's "specific concern[s]" when it remanded. Summary Order 4, Dkt. 197-1.

Kurtz contends that Weir's hedonic regression can serve as "common evidence" that the flushable claim caused the price of Costco's wipes to be inflated because "there would be no point in using that technique" if one could not "figure out some sort of causal effect" from it. Kurtz 38. But Weir himself admitted that that an economic theory, separate from the regression itself, is required to bridge the gap between correlation and causation. A3023. Weir offered none.

This Court has also recognized that regression analysis "cannot explicitly determine causation," and can only "strongly support a causal relationship" between two variables when it "rule[s] out or limit[s] the influence of other

variables" or "demonstrate[s] that those other variables are merely a function of one of" the two variables between which the regression seeks to measure a relationship. *Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 96 (2d Cir. 2015). Here, as explained *supra* pp. 10-13, Weir's model did not rule out the influence of key product attributes that consumers value more than flushability. It thus cannot support an inference that the flushable claim caused the price of Costco's wipes to be higher than it otherwise would have been.

In any event, even if Weir's regression model could show that the flushable claim caused the price of Costco's wipes to be higher, it says nothing about loss causation. As Costco explained, if class members in a but-for world would have purchased equally or more expensive products (as Kurtz's own purchasing history shows he would have), they were not harmed by the higher price for Costco's flushable wipes. Costco 40. Weir's model cannot answer that question, only individualized inquiries can. *Id.*

Kurtz's sole response is that that his GBL claims do not require him to prove reliance. Kurtz 35 (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000)); Kurtz 40-41 (arguing that this Court's securities-fraud and RICO cases are inapposite because they "incorporate questions of reliance incompatible with GBL claims"). But Costco's arguments do not relate to reliance—that is, whether Kurtz

or other class members personally and justifiably relied on Costco's alleged misrepresentation in making their purchasing decisions. Instead, Costco's arguments relate simply to whether class members actually suffered a loss "because of" Costco's allegedly "deceptive act." *Stutman*, 95 N.Y.2d at 30. Such but-for and loss causation requirements are not unique to securities-fraud or RICO claims; they are requirements of New York GBL claims as well. Costco 38.

## CONCLUSION

Weir's testimony should have been excluded and the district court's class certification order should be reversed, or at the very least vacated so the district court can resolve disputes over class certification.

Dated:  April 24, 2020                    Respectfully submitted,


                                          s/ Brian R. Matsui
                                          BRIAN R. MATSUI
                                          MORRISON & FOERSTER LLP
                                          2000 Pennsylvania Avenue, NW
                                          Washington, DC 20006
                                          Telephone: (202) 887-8784
                                          BMatsui@mofo.com

                                          ADAM J. HUNT
                                          LENA H. HUGHES
                                          MORRISON & FOERSTER LLP
                                          250 West 55th Street
                                          New York, NY 10019
                                          Telephone: (212) 468-8000

                                          *Counsel for Defendant-Appellant*
                                          *Costco Wholesale Corporation*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 4,487 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) and Second Circuit Rule 32.1(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016, in 14-point Times New Roman font.

Dated:  April 24, 2020                          _____ s/ Brian R. Matsui _____

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system on April 24, 2020.

I certify that all case participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 24, 2020                _____s/ Brian R. Matsui_____

ny-1884270