# 17-1856-cv(L), 17-1858-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

D. JOSEPH KURTZ, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff-Appellee,*

– v. –

COSTCO WHOLESALE CORPORATION,
KIMBERLY-CLARK CORPORATION,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (WEINSTEIN, J.)

## SUPPLEMENTAL POST-REMAND REPLY BRIEF FOR
DEFENDANT-APPELLANT KIMBERLY-CLARK CORPORATION

KARA L. MCCALL
DANIEL A. SPIRA
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

EAMON P. JOYCE
KWAKU A. AKOWUAH
ALEXANDER B. PORTER
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendant-Appellant Kimberly-Clark Corporation*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ....................................................... iii

PRELIMINARY STATEMENT ................................................. 1

ARGUMENT .......................................................................... 1

I.  WEIR'S TESTIMONY IS INADMISSIBLE .......................... 1

A. Plaintiff Confirms Weir's Failure to Account for "Major" Product Attributes. ....................................................... 2

B. Plaintiff Failed To Rebut Proof That Weir's Model Produces Unreliable Results. ........................................ 5

C. Plaintiff Does Not Dispute Other Flaws Fatal to Weir's Analysis ... 9

  1. Weir's Model Omitted Relevant Products Even While Opining About Them. ........................................ 9

  2. Weir Treated Changing Variables As Constants. ........ 11

  3. Weir Attributed a "Marketwide" Premium to Kimberly-Clark Alone. .................................................. 11

D. Plaintiff Cannot Defend the District Court's Decision to Admit Weir's Analysis As Evidence of Classwide *Causation*. ................... 13

II. THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFF SATISFIED RULE 23(b)(3). ............................... 14

A. Weir's Damages Model Cannot Demonstrate Classwide *Injury*. ... 15

  1. Plaintiff Does Not Dispute That Weir Has Expounded a Damages Theory When He Needs To Show *Injury* Can Be Proven Classwide .......................................... 15

  2. Even If Weir's Model Spoke to Injury, Not Damages, It Would Not Support Certification. ........................... 17

    a. Weir's Model Implicates Individualized Inquiries about Time of Purchase and Which Products Were Purchased ................ 17

    b. Plaintiff Has No Answer to the *Comcast* Problems Presented by Reliance on Weir's Model ...................... 19

B. Weir's Damages Model Cannot Demonstrate Classwide *Causation.* ........................................................... 21

   1. Plaintiff Ignores New York's GBL Causation Requirements. ..... 21

   2. Plaintiff Ignores the Powerful Individualized Causation Defenses Inherent in Weir's Analysis. ......................................... 24

CONCLUSION ....................................................................... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amla Litig.*,
　320 F. Supp. 3d 578 (S.D.N.Y. 2018) .................................................. 23

*In re Asacol Antitrust Litig.*,
　907 F.3d 42 (1st Cir. 2018) ................................................. 17

*Bazemore v. Friday*,
　478 U.S. 385 (1986) ............................................................. 3

*Bickerstaff v. Vassar Coll.*,
　196 F.3d 435 (2d Cir. 1999) ............................................ 3, 5

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit*
　*Suisse Sec. (USA) LLC*,
　752 F.3d 82 (1st Cir. 2014) ................................................. 14

*Chen v. Dunkin' Brands, Inc.*,
　--- F.3d ---, 2020 WL 1522826 (2d Cir. Mar. 31, 2020) ...................... 20

*Denney v. Deutsche Bank AG*,
　443 F.3d 253 (2d Cir. 2006) ................................................. 17

*Ebin v. Kangadis Food Inc.*,
　297 F.R.D. 561 (S.D.N.Y. 2014) ............................................ 23

*Gale v. Int'l Bus. Machs. Corp.*,
　9 A.D.3d 446 (2d Dep't 2004) ............................................. 21

*McLaughlin v. Am. Tobacco Co.*,
　522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds*
　*by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) .............. 14

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*,
　341 F. Supp. 3d 213 (S.D.N.Y. 2018) .................................... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) ............................................... 17

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
49 F. Supp. 3d 385 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43
(2d Cir. 2016) ................................................................. 2, 11

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ......................................... 17, 20

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (2000) ...................................................... 22, 23

*Sykes v. Mel S. Harris & Assocs., LLC*,
780 F.3d 70 (2d Cir. 2015) ............................................ 15, 17

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm.*
*LP*,
136 A.3d 688 (Del. 2016) ..................................................... 23

## Other Authorities

Federal Rule of Civil Procedure 23 ............................. 14, 15, 20

New York General Business Law § 349 .......................... 14, 21

New York General Business Law § 350 ................................. 21

## PRELIMINARY STATEMENT

This Court remanded for Plaintiff to prove he could use common evidence to show classwide injury and causation, but as Kimberly-Clark's post-remand brief showed, his expert's work was not remotely fit for that task. Plaintiff's expert, Mr. Weir, decided to try to use a regression model to show only *damages*. Plaintiff does not dispute that fact, but argues that Weir's damages model suffices to show injury because the difference between injury and damages is merely "semantical," and claims that the damages model suffices to show classwide causation. That is not the law, in this Circuit or anywhere. The District Court erred in accepting Weir's model as providing proof of classwide injury and causation, and indeed abused its discretion in admitting Weir's grossly unreliable testimony into evidence at all. The certification order should be reversed.

## ARGUMENT

## I.    WEIR'S TESTIMONY IS INADMISSIBLE.

Weir's work was comprehensively flawed, as highlighted by his decision to exclude "major" product attributes from his regression, and his effort to assign a price premium that, under his model, first emerges

in 2017 to an entire class period beginning in 2008. *See* Br.16-33.[1]
Plaintiff fails to meaningfully address these flaws or controlling
precedent rendering them fatal, wrongly urging that the problems affect
"weight," not admissibility. Pl.-Br.15.

Even if a court might excuse *one* of these flaws as a question of
"weight," it is an abuse of discretion to admit expert testimony that
suffers from *all* of these shortcomings—particularly when that
testimony is offered to prove in one stroke that every consumer who
bought Kimberly-Clark's different brands of flushable wipes differently
marketed to different types of consumers, who have different
motivations for purchase, suffered the *same* injury through the *same*
causal mechanism.

### A.    Plaintiff Confirms Weir's Failure to Account for "Major" Product Attributes.

Plaintiff does not dispute that "to be admissible, a regression
analysis must control for the 'major factors' that might influence the
dependent variable." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F.
Supp. 3d 385, 400, 400-01 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43 (2d

---

[1] Kimberly-Clark cites its opening brief as "Br." and Plaintiff's brief as
"Pl.-Br."

Cir. 2016); *see also Bazemore v. Friday*, 478 U.S. 385, 400 & n.10 (1986) (cited Pl.-Br.16) (regression must "account[] for the major factors" and "some regressions" are "so incomplete as to be inadmissible as irrelevant");[2] *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) (rejecting regression that "failed to account for the major factors"). Weir's regression analysis, however, does not control for cleaning ability, which consumers (including Kurtz) identify as the *single* most important attribute of wipes products, or for product texture. Br.10-11, 17-19.

Weir purportedly began by identifying variables that Kimberly-Clark deponents or consumer research identified as significant to purchase decisions. But Weir controlled only for *some* of those variables, omitting the *most important* factors and several others that the record showed are more important to consumers than flushable. Br.17-19; CA2565-CA2567; CA1977-CA1981. Weir thus demonstrably failed to control for many "major factors."

---

[2] Plaintiff cites many other cases that do not address regression analyses. Those that do hold only that a failure to control for *non-major* variables does not require exclusion. Pl.-Br.16-17.

Plaintiff admits that Weir failed to expressly include cleaning ability and other major variables. He asserts that Weir controlled for them *indirectly*, by incorporating a "'brand' variable" that supposedly encompassed all the critical variables he failed to analyze directly. Pl.-Br.18-19 n.1. This purported indirect control approach had no evidentiary basis, however. Weir never conducted any factual analysis of which attributes, if any, consumers associate with Kimberly-Clark's brand names. Worse, he ignored unchallenged (and common-sense) evidence that consumers *distinguish* "brand" from cleaning ability and texture. A3118:2-17; CA1977-CA1982; Br.22 n.4. Plaintiff is thus unable to explain critical questions like how an umbrella "brand" variable could capture the value that consumers associate with major variables like cleaning ability and texture, and why the "brand" variable did not *also* capture the "flushable" variable.

While Plaintiff complains that the omitted variables are "difficult to quantify," Pl.-Br.19 n.1 (attempting to distinguish *Bickerstaff* and *Reed*), he never explains why the omitted variables are any harder to quantify than "flushable." Cleaning ability and texture *are labeled* on Kimberly-Clark's wipes, just like "flushable." *See* Br.10-11, 19. These

representations therefore could be coded with the same "yes/no" used for "flushable."[3]

Plaintiff seeks to recast these failings as exercises of Weir's "professional judgment." Pl.-Br.16. That is no answer. All experts purport to apply "professional judgment." The point of *Daubert* is to exclude expert opinions that lack sufficient grounding in fact or reliable method, as Weir's demonstrably does. Weir should be excluded because his regression does not account, as it must, for "major factors." *Bickerstaff*, 196 F.3d at 449.

## B.  Plaintiff Failed To Rebut Proof That Weir's Model Produces Unreliable Results.

Plaintiff does not dispute that where "the choice of the end-date for the observations in [a regression] analysis has an outcome-determinative effect," the analysis should be excluded. Br.24-25 (citing *Reed*, 49 F. Supp. 3d at 407).

---

[3] Plaintiff claims Kimberly-Clark must show that including the omitted variables would change Weir's results. Pl.-Br.19. Not so. *Daubert* requires *Plaintiff* to establish that the regression analysis reliably accounts for the major variables. Anyhow, Kimberly-Clark used elementary mathematics to show that, if one accepts (as the District Court did) Weir's theory that every variable labeled on a package carries a monetary value, A3346:21-25, the missing major variables *necessarily* change the result. A3962-A3966; A4083:3-A4085:10.

Kimberly-Clark's expert, Dr. Ugone, established that during all but two months of the class period for which Weir has data, including the whole time Plaintiff purchased flushable wipes, Weir's regression model shows no statistically significant premium associated with a "flushable" representation. Br.24. In other words, the "price premium" that Weir seeks to apply to the entire 2008-2017 class period emerges in Weir's model *only* if 2017 or later data is included. Without that data, the "price-premium" vanishes.

There is *no* factual basis for Plaintiff's response that Dr. Ugone did not "'r[u]n Weir's model' across different time periods," "dropped valuable data," and therefore "skewed the results." Pl.-Br.21. Dr. Ugone explained and demonstrated that he did "not chang[e] anything else in [Weir's] model," and used Weir's "regression analysis, his explanatory variables, all I'm doing is changing the period of time in which you do the analysis.… [Weir's] own model shows that there is not [a premium] for these time periods." A3199:6-13; *see, e.g.,* A3194:9-A3201:6; CA1446 ("within Mr. Weir's own regression framework (even with its flaws), there is no evidence" of a premium before 2017); CA1606 (showing

Ugone used the same data, products, and attributes as Weir, modified only by time period); Br.13, 23-24.

Indeed, Weir conceded on cross-examination that Ugone did *not* change anything else, and admitted that "the changes in the time period [are] material." A2928:21. That, of course, was Dr. Ugone's point: something is broken in the model. Weir's response to Dr. Ugone's criticism only highlights the problem:

> My model is designed to work over the proposed class period. [Ugone] is slicing the model into individual years. If I were to do [a] model to look at individual years I may wind up with a different model than I used as opposed to one that's designed to work over the entirety of the class period.

A2930:4:9. A model so flimsy and result-oriented (it does *not* analyze the class period) has no place before a jury. *E.g., In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018) ("Opinions that assume a conclusion and 'reverse-engineer[] a theory' to fit that conclusion are … inadmissible") (collecting cases).

Moreover, Weir unreliably relies on a premium that purportedly did not develop until the end of and *after* the class period to opine that an "aggregate" (*i.e.*, average) premium exists across the entire class

period, including years for which he has no data. Br.23-24. Plaintiff calls it "sensible and unremarkable" to apply an aggregate premium calculated from 2010-2019 to a certified class period from 2008-2017, Pl.-Br.20. But he never comes to terms with the problem that Weir is assigning a premium that (under his model) did not develop until 2017 to purchases made *before* any such premium came into existence. The issue is fundamental. *A consumer like Kurtz who purchased only pre-premium did not become harmed when later purchasers (purportedly) paid a premium.*

Plaintiff's assertion that "Weir re-ran his own hedonic regression over similar time periods and accounting for Defendants' concerns, and continued to find statistically significant … price premiums" is misleading. Pl.-Br.21. *Weir does not dispute that there is no premium under his own model associated with "flushable" between 2010 and 2016.* Instead, Weir testified only that when he moves the start date "*forward* from the beginning of the [2010] data" and continues to extend the period into 2017 or 2019, he generates a premium. A3691:22-A3692:12 (emphasis added); *see* A3690:6-12 ("Rather than as Dr. Scott and Dr. Ugone did[, *i.e.,*] back away from the end of the class period, I

moved forward into the class period."); A3700:2-6 (Weir "still ha[s] not run a regression analysis for the actual period of time that Dr. Kurtz was purchasing Kimberly-Clark flushable wipe products"). That is, Weir's testimony shows that including and extrapolating data from the end of the class period (Q1 2017) or after the class period (2018-2019) is essential to his model's ability to show a premium *anytime* in the class period." That is fully consistent with Dr. Ugone's conclusion that the model shows no premium for all but two months of the class period. Br.24

## C.  Plaintiff Does Not Dispute Other Flaws Fatal to Weir's Analysis.

### 1.  Weir's Model Omitted Relevant Products Even While Opining About Them.

Plaintiff does not dispute that a regression analysis must include a representative sample of data, and that an improper sample that suffers from "selection bias" cannot produce reliable results. Br.26-27. Weir, however, excluded a huge range of relevant products from his model. With no explanation aside from saying he "do[es]n't feel that it's necessary," A2958:8-12, he excluded *all* feminine hygiene wipes—but then testified that the premium applies to Kimberly-Clark's flushable feminine wipes, A3016:11-3017:1.  He excluded all private label

products from his Kimberly-Clark model even though such products constitute one-third or more of the market and were central to his Costco model. Due to these and other omissions, Weir's Kimberly-Clark model merely included 32% of the products for which he had available data. Br.26-27.[4]

The District Court never addressed this problem. Here, Plaintiff offers the strawman that Weir need not "include every product in the marketplace." Pl.-Br.22. Kimberly-Clark never argued otherwise. What *is* required is a product set that is *representative* of those about which Weir opines. Weir crashes into that hurdle; his data set excluded entire product *categories* about which he opines, like feminine wipes. Weir's impermissible "selection bias" warrants exclusion.[5]

---

[4] Plaintiff's assertion that Weir included "approximately 72% of the market" is false. Pl.-Br.22. Weir admitted that only his report in a different case involving California's market was that inclusive; he has no idea how much of New York's market his data covers. A2841:16-25; A3014:5-17.

[5] Again, Plaintiff wrongly attempts to shift the onus to Kimberly-Clark to show that the excluded products "would materially change Weir's results." Pl.-Br.23; *see supra* p.5 n.3. Regardless, the exclusions may well have been critical. Kimberly-Clark's feminine wipes have numerous variables labeled far more prominently than "flushable," Br.11, and the "value" that would need to be assigned to those attributes threatens to eliminate any alleged "flushable" premium.

## 2. Weir Treated Changing Variables As Constants.

Kimberly-Clark irrefutably showed that the language, emphasis, size, and placement of "flushable"-related representations on its product labels changed during the class period, contrary to Weir's assumption that these attributes were uniform value across time. Br.27-29.

Plaintiff provides no support for Weir's failure to account for these changes beyond Weir's say-so and his assertion, refuted by the record, that the "flushable" claim "remained constant." Pl.-Br.23-24. A model does not "control[] for other factors that might influence the dependent variable" when neither those "other factors" nor the "dependent variable" are accurately recorded in the model. *Reed*, 49 F. Supp. 3d at 396.

## 3. Weir Attributed a "Marketwide" Premium to Kimberly-Clark Alone.

Weir calculated a "*marketwide*" price premium supposedly associated with "flushable" labeling by manufacturers across the industry, and then baselessly ascribed it to Kimberly-Clark. SPA143 (emphasis added). This method is unfit for assessing injury caused by *Kimberly-Clark's* flushable wipes. It risks attributing to Kimberly-Clark

a premium associated only with products made by other companies. Br.30-31.

Ignoring Weir's own description of his analysis, Plaintiff asserts that "Weir properly controlled for and actually calculated a price premium specific to Kimberly-Clark." Pl.-Br.24 n.5. That is both misleading and non-responsive. Weir purported to calculate different "flushable" premiums for Kimberly-Clark and Costco, respectively, but the only reasons these purported premiums differ is that Weir's two models each included different products for analysis. A2842:7-10. The price premium Weir attributes to Kimberly-Clark products applies equally to every other flushable wipe manufacturers' products in that data set; the premium he attributes to Costco products likewise applies to the other flushable wipes in *that* data set. Br.30-31.

Thus, in no way does Weir calculate a premium specific to Kimberly-Clark. The premium he calculated for "flushable" is based on not only Kimberly-Clark's products, but also on the flushable wipes (and labeling) of *other* manufacturers. Neither Weir nor Plaintiff offered any response to Kimberly-Clark's showings that the claimed premium may be driven entirely by other manufacturers' products and labeling.

There is therefore a major analytical gap between Weir's *marketwide* model and Weir's *company-specific* opinion that consumers paid a price premium for every *Kimberly-Clark* product. His company-specific conclusion should have been excluded on that ground alone. It is unsupported by *evidence*. Br.31.

### D. Plaintiff Cannot Defend the District Court's Decision to Admit Weir's Analysis As Evidence of Classwide *Causation.*

Plaintiff makes virtually no attempt to justify admission of any testimony from Weir about classwide *causation* given evidence that, *inter alia*, the price and demand for Kimberly-Clark's flushable wipes increased at the time when media was trumpeting the supposed deception about flushability. Br.31-33; Pl.-Br.24 n.5. If false flushable claims were causing a price premium, that premium should have gone away—not *increased*—when the "truth" emerged.

Put aside that there is no evidence here of the efficient market that would be needed for an aggregate, "marketwide impact on price" (A2885:12) to flow to all consumers of Kimberly-Clark flushable wipes. (Highly variable retailer pricing shows the opposite, CA1383-CA1384; CA1414-CA1431, consistent with this Court's recognition that markets

for consumer goods are "anything but efficient," *McLaughlin v. Am.*
*Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008)). In contending that
Kimberly-Clark's labeling "caused class-wide injury," Pl.-Br.24 n.5,
Weir never accounts for "information previously disclosed" in negative
media reports "that, under an efficient market theory, would have
already been incorporated into" the price for flushable wipes.
*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec.*
*(USA) LLC*, 752 F.3d 82, 94-95 (1st Cir. 2014) (excluding expert).
Plaintiff makes no attempt to address this failing. *See* Br.32-33.

## II.   THE DISTRICT COURT ERRED IN HOLDING THAT PLAINTIFF SATISFIED RULE 23(b)(3).

Plaintiff does not explain how 23(b)(3) certification can be upheld
given Weir's admission that his opinion concerned classwide *damages*,
not injury to each class member, Br.35-36, and that he simply assumed
causation, *id.* 48-54. Moreover, even if Weir's work spoke to injury, his
model cannot show that every class-member was injured by each
purchase of a Kimberly-Clark flushable wipe, because it does not
establish that there was a price premium *throughout* the class period.
Nor does it show (or attempt to show) classwide *causation* consistent
with precedent construing GBL section 349, which requires that a

plaintiff has *seen* the alleged misrepresentation, and given its failure to account for the market's changed knowledge. Plaintiff's attempt to use Weir's model to satisfy Rule 23(b)(3) predominance lacks merit.

## A. Weir's Damages Model Cannot Demonstrate Classwide *Injury*.

### 1. Plaintiff Does Not Dispute That Weir Has Expounded a Damages Theory When He Needs To Show *Injury* Can Be Proven Classwide.

Kimberly-Clark demonstrated that Weir failed to proffer a method to "prove, through common evidence, that all class members were ... injured." *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 82 (2d Cir. 2015). Weir's model "address[es] 'damages in the aggregate for the class,'" not classwide injury. Br.35-41. Weir's "classwide" price premium says nothing about whether *any* individual consumer, let alone *all* consumers, paid a premium and thus were *injured*. Br.37-40.

Plaintiff does nothing to address these problems. Plaintiff instead argues that, "[b]y finding statistically significant price premiums, Weir establishes that all class members have been 'harmed,' 'injured,' and 'damaged' by Defendants' mislabeling." Pl.-Br.30. This doubles down on the fallacy of averages problem Kimberly-Clark identified. Br.38-41. Plaintiff's insistence that an average premium for a period proves all

individuals paid a premium for every purchase during those periods would be sound only if, contrary to the record and the law, consumer markets operated with such efficiency that the presence or absence of a "flushable" label would lead inexorably to an increase or decrease in the price each consumer pays for each package of flushable wipes. *Contra supra* pp.13-14. The jump from averages to individual outcomes is worse yet in that Weir purported to find an aggregate premium that is statistically significant when measured across a period of years (but which disappears if particular periods, 2017-2019, are excluded). On Weir's theory that all consumers are injured in a period when there is a premium, it follows that no consumers were injured in premium-free periods. *See also infra* §II.A.2.a. But Weir never acknowledges that implication of his theory.

Plaintiff also claims Defendants' "insistence" that Weir "determine what *injury* each individual consumer suffered by a specific dollar amount," "conflicts with Second Circuit law" and is a mere "semantical game" between "injury" and "damages." Pl.-Br.29, 31 (emphasis added). Kimberly-Clark does not argue Kurtz must demonstrate a "specific dollar amount" for each consumer. *See* Br.40. Kimberly-Clark's

argument is that Kurtz needed (but failed) to show that he can marshal common proof to demonstrate classwide *injury*, *i.e.*, every class-member paid a price premium for each relevant purchase. *See*, *e.g.*, *Sykes*, 780 F.3d at 82; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); Br.35-36, 44 (discussing *Rail Freight Surcharge* (D.C. Cir.); *Asacol* (1st Cir.)). The distinction between "injury" and "damages" is much more than "semantics." Pl.-Br.30. Individualized *damages* issues do not necessarily preclude certification. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). Individualized *injury* issues, however, plainly do. Br.35-36, 44.

### 2. Even If Weir's Model Spoke to Injury, Not Damages, It Would Not Support Certification.

#### a. Weir's Model Implicates Individualized Inquiries about Time of Purchase and Which Products Were Purchased.

Kimberly-Clark has individualized defenses to claims by consumers who purchased its flushable wipes in the *two years* of the class period for which Weir had no data and therefore did not run his model (2008-2009) and in the *seven years* for which Weir's model yields no "aggregate" premium (2010-2016). Br.42-44.

That showing is fatal to class certification because, as to each and every consumer who purchased during those *nine years*, Kimberly-Clark has an individualized defense that Weir's model does not address: "there was no price premium on the day you purchased, so you have no injury." *See id.* If this case went to trial under the certification order, there can be no doubt that this plaintiff-by-plaintiff and purchase-by-purchase defense would predominate.

Plaintiff has no answer to that problem. With regard to the 2008-2009 timeframe, Plaintiff merely suggests that a price premium could be reasonably inferred, Pl.-Br.20 n.2, despite Weir's admission that he can "only offer my testimony as to the portion for which I have data." A2964:25-A2965:1. Weir's model does not provide any evidence of a price premium during those no-data years, leaving no basis to claim common proof of injury for 2008-2009.

For the 2010-2016 timeframe, Weir's model shows no premium, and thus no basis to claim any "injury" for that period. Plaintiff's only response is that Dr. Ugone "cherry-picked the data." Pl.-Br.20. As detailed *supra* pp.6-7, that charge is baseless. Weir's model shows no premium for the majority of the class period.

Plaintiff likewise has no answer to the independently dispositive problem that, *under Weir's own model*, *there was no premium in the period when Kurtz bought Kimberly-Clark products*. Br.42-44. Plaintiff thus has no injury and no standing to represent class-members who purportedly paid a premium in early 2017.

> **b.** **Plaintiff Has No Answer to the *Comcast* Problems Presented by Reliance on Weir's Model.**

Plaintiff's reliance on Weir created *Comcast* problems because Weir's model does not fit Plaintiff's liability theory that purchasers of Kimberly-Clark flushable wipes paid a premium. The model does not show that *Kimberly-Clark*'s flushable products carried a premium. It instead purports to show that, *across the industry* and *in the aggregate*, flushable wipes had a premium. *See* CA1259_¶57; Br.30; *supra* pp.11-12. Plaintiff cannot, and does not, dispute this fact.

Plaintiff instead claims, as the District Court erroneously held, that *Comcast* is inapplicable because this case presents a "single theory" of liability rather than multiple theories of liability. Pl.-Br.28 (citing SPA165). Precedent forecloses that attempted distinction. "*Comcast* held that a model for determining classwide damages relied

upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach*, 778 F.3d at 407. Weir's model flunks that test. Weir purports to measure a premium attributable to flushable wipes generally, but this class seeks to recover only from Kimberly-Clark specifically. The model does not match Plaintiff's claim.

Plaintiff also says *nothing* in response to Kimberly-Clark's showings that Weir's model is inconsistent with Plaintiff's deception theories because the model ignores changes over time as to Kimberly-Clark's (i) flushability representations, and (ii) products' flushability performance. Br. 45-47. This Court recently reaffirmed that "context is crucial" to whether a particular statement is misleading under the GBL. *Chen v. Dunkin' Brands, Inc.*, --- F.3d ---, 2020 WL 1522826, at *6 (2d Cir. Mar. 31, 2020). A model that ignores differences between statements and products is useless to a plaintiff who must show that the particular representation he saw misled him injuriously.

### B. Weir's Damages Model Cannot Demonstrate Classwide *Causation*.

#### 1. Plaintiff Ignores New York's GBL Causation Requirements.

Unable to dispute that Weir ignored Kimberly-Clark's research demonstrating that many consumers, including Kurtz himself, who purchase Kimberly-Clark's flushable wipes do not flush them, or otherwise believe they should not be flushed, Br.8-18, 50-51, Plaintiff insists that "such 'field work' is irrelevant where Kurtz's injury occurred at the cash register," Pl.-Br.38 (citing SPA-166).

Not only does that argument depend on the type of fraud-on-the-market theory that Plaintiff tries elsewhere to disavow, Pl.-Br.40, but it fails to heed New York precedents demonstrating that causation is a critical aspect of GBL §§349 and 350 claims. *See* Br.48 (citing, *inter alia*, *Gale v. IBM Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) (unless plaintiff saw the "particular misleading statements," "they could not have been the cause of his injury")). Weir's model *concededly* flouts this requirement, capturing consumers who did not "see the [flushable] claim" before purchasing, and thus have no GBL claim. A2887:5-8.

This is not academic. For example, Plaintiff simply assumes away causation issues as to the back-of-package "flushable" labeling for

Kimberly-Clark's Poise product, which many consumers presumably did not see before purchasing:





A3966; A2664.

Plaintiff (at 35) invokes *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000), but misreads that decision. *Stutman* does not hold that to establish causation, GBL plaintiffs "need do 'nothing more' than show they suffered a loss 'because of defendant's deceptive act.'" Pl.-Br.35. *Stutman* held only that the *particular* "deceptive act" in that case (an alleged misrepresentation in a loan transaction document) satisfied the

GBL's causation element at the pleading stage, given the allegation that "because of defendant's deceptive act, [plaintiffs] were forced to pay a $275 fee *that they had been led to believe was not required.*" 95 N.Y.2d at 30 (emphasis added). That language plainly describes plaintiffs who *read* the alleged misrepresentation.[6] Plaintiff's effort to expand *Stutman* is refuted, moreover, by *Gale* and *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharmaceuticals LP*, 136 A.3d 688, 696 (Del. 2016), *see* Br.48, which Plaintiff ignores. Those decisions rely on *Stutman* in rejecting GBL claims on causation grounds because plaintiffs did not see the challenged representations or (like Kurtz) continued to purchase even after concluding that the representations were false. These same individualized causation issues are present here, and there is no argument that Weir's model could address them.

---

[6] Similarly, in *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014 (Pl.Br.38), the representation at issue was very large and prominent, and the only question was whether the product was in fact olive oil or a different substance (pomace) indisputably traded for less on commodities markets. In *In re Amla Litig.*, 320 F. Supp. 3d 578 (S.D.N.Y. 2018) (Pl.Br.38), defendants made a *reliance* argument that plaintiffs might have purchased the product even if they had known the truth. Moreover, Plaintiffs' citation to *Amla* is ironic in that Judge Rakoff later excluded Weir and decertified the class. A2410-A2416; A2431.

### 2. Plaintiff Ignores the Powerful Individualized Causation Defenses Inherent in Weir's Analysis.

Kimberly-Clark demonstrated that (i) Weir's failure to consider the market's evolving knowledge of media surrounding flushable wipes is not saved by Weir's invocation of fraud-on-the-market principles, and (ii) Weir's finding of a purported association between an aggregate premium and flushable labeling says nothing about whether flushable representations in fact caused the purported premium. Br.51-53. Plaintiff says that "Weir's model generates a price premium regardless of the impact of any external market forces," Pl.-Br.40, and Weir's regression demonstrates causation *per se*, Pl.-Br.39.

Plaintiff's arguments are largely about the merits, not whether his model avoids individualized causation issues. Regardless, they make no sense. First, Weir admits that his opinion is about deception's "marketwide impact on price." A2885:12. Because media evidence disclosing the "truth" about "flushable"-related claims is central to any such impact analysis, Br.12-15, 52-54, that evidence creates profound individualized issues for consumers who purchased when the market knew more. Weir admittedly ignored the market's knowledge, Pl.-Br.52-53, but Kimberly-Clark would be entitled to raise that defense at trial

as to individual purchasers. Second, Plaintiff's position that Weir's "'marketwide inflation' ... establishes a direct causal link between the injury and the deceptive act," Pl.Br.39 (emphasis omitted), is flawed because, as shown *supra* pp.11-13, an aggregate across manufacturers, products, flushable representations, and time periods says nothing about whether a particular flushable representation caused a premium for a specific purchase. In any event, trying the merits of that "marketwide inflation" issue presents the individualized market knowledge issues just discussed.

## CONCLUSION

For these reasons, those in the Opening Brief, those shown pre-remand, and those in sections II and III.A.1-2 & B of Costco's Reply (which Kimberly-Clark incorporates), Kimberly-Clark requests that Weir be excluded and class certification be reversed.

April 24, 2020                    Respectfully submitted,

/s/ *Eamon P. Joyce*

Eamon P. Joyce
ejoyce@sidley.com
Kwaku A. Akowuah
kakowuah@sidley.com
Alexander B. Porter
alex.porter@sidley.com

Sidley Austin llp
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Fax: (212) 839-5599

Kara L. McCall
kmccall@sidley.com
Daniel A. Spira
dspira@sidley.com
Sidley Austin llp
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036

*Attorneys for Kimberly-Clark Corporation*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This reply brief complies with the type-volume limitation because it contains 4,499 words, excluding the items exempted by Rule 32(f), which is "no more than half of the type volume," Fed. R. App. P. 32(a)(7)(B)(ii), that this Court's November 12, 2019 order set for the parties' principal briefs, *i.e.*, 9,000 words. *See* ECF No. 232 (No. 17-1856). This brief complies with Local Rule 32.1.

This brief complies with the typeface requirements of Federal Rule of Appellate procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 2016 in a 14-point Century Schoolbook font.

/s/ *Eamon P. Joyce*
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599
ejoyce@sidley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2020, I caused the foregoing brief to be served on all registered counsel through the Court's CM/ECF system.

/s/ *Eamon P. Joyce*
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599
ejoyce@sidley.com